[L. A. No. 17749.   In Bank.   Oct. 29, 1942.]

E. E. JOHNSTON et al., Appellants, v. OLIVE LANDUCCI, Respondent.

David E. Peckinpah and L. N. Barber for Appellants.

Matt Wahrhaftig, Samuel F. Hollins and G. L. Aynesworth for Respondent.

PETERS, J. pro tem.—Plaintiffs and cross-defendants E. E. Johnston and Viola Johnston, husband and wife, appeal from a judgment quieting their title to certain lands in Fresno County, subject to a lien of defendant and cross-complainant *Olive Landucci*, which lien is ordered foreclosed by the judgment. The sole question presented on this appeal is whether the lien ordered foreclosed is based upon a valid contract, it being the contention of the appellants that such contract was totally unsupported by consideration. The trial court found, and its judgment is predicated on such finding, that the contract was supported by consideration.

The facts giving rise to the controversy are as follows: In 1928 appellant E. E. Johnston, and his adult son, defendant Arthur F. Johnston, purchased on an installment contract from Miller & Lux certain farming land in Fresno County for a total purchase price of $9,230.70. Prior to November of 1931 the two Johnstons took possession of the land, farmed it, and expended substantial sums in improvements. In July of 1931 the two Johnstons, by written agreement, and subject to the Miller & Lux contract, partitioned the property, Arthur taking the east half and his father taking the west half. The land declared subject to respondent's lien is that allocated to Arthur—the east half of the Fresno property.

After the voluntary partition, Arthur leased his portion to his father for the year 1931, receiving $1,500 for the lease. After 1931, E. E. Johnston remained in possession of the entire property. He farmed it and each year paid the installment due Miller & Lux. These payments were made, for the most part, from the proceeds realized by him from farming the entire parcel—both his own and that belonging to· his son. In 1938 the last installment was paid, and Miller & Lux deeded the entire parcel to E. E. and Arthur Johnston. In February of 1939 Arthur quitclaimed his half to his mother, Viola Johnston, one of the appellants.

On February 5, 1931, A. E. Landucci, now deceased, and through whom his wife, the respondent, claims, purchased from Miller & Lux certain farming lands in Merced County for a total purchase price of $39,750.40, $9,937.60 of which was paid in cash, the balance payable in installments. The trial court found that Landucci purchased the Merced property ''at the special instance and request of Arthur F. Johnston,'' the evidence showing that Arthur wanted to buy the land, but Miller & Lux was unwilling to enter into the transaction with him because of his lack of financial backing. On the same day (February 5, 1931) Landucci entered into a sub-contract with Arthur to sell him the Merced property for a total purchase price of $42,146.30, $2,000 of which was paid in cash, the balance payable in installments. Arthur immediately took possession of the Merced lands and attempted to farm and develop them. By November of 1931 Arthur found that he was unable to further finance the operations on the Merced property, and was unable to make the payments called for by his sub-contract with Landucci. Arthur was desirous of salvaging some portion of his equity. He started negotiations with a man by the name of Imperatrice, looking toward an exchange of his interest in the Merced contract for a hotel building in the city of Fresno, and an escrow was set up to accomplish that trade. In order to facilitate the trade Arthur wanted more than a mere sub-contract to buy the Merced lands from Landucci—he wanted an assignment of Landucci's contract with Miller & Lux. After some negotiations with Landucci, on November 24, 1931, Landucci and Arthur entered into a transaction whereby Landucci delivered to Arthur the contract under which he was purchasing the Merced property from Miller & Lux, and executed

and delivered an assignment of that contract to Arthur. In return, Arthur executed and delivered to Landucci his promissory note for $9,000, payable in installments, and, as security for the note, assigned to Landucci his interest in the east half of the Fresno lands. That promissory note has never been paid.

After the Arthur Johnston-Landucci deal was completed in November of 1931, Arthur treated the Merced equity as his own, going so far as taking possession and collecting the rentals from the hotel for which he expected to trade that equity. The Imperatrice deal was never consummated, partially, at least, because the other parties to the transaction believed that Arthur was attempting to defraud them. Thereafter, Arthur attempted to sell his equity to others, but was unsuccessful.

After E. E. Johnston had completed payments on the Fresno lands, and Miller & Lux had deeded the land to E. E. and Arthur Johnston, and after Arthur had quitclaimed his interest in those lands to his mother, E. E. Johnston and his wife brought the present action to quiet their title to the entire Fresno parcel. Respondent Landucci cross-complained, claiming an equitable mortgage on the east half of such lands, based on the promissory note and assignment executed by Arthur in November of 1931. The trial court determined that the 1931 note had not been paid, was not barred by the statute of limitations, and held that the assignment created a valid lien as security, which lien it ordered foreclosed. Although Arthur was made a party to the proceeding, no deficiency judgment was sought against him, and he has not appealed.

Appellants urge that the promissory note and assignment executed by Arthur in November of 1931 were totally unsupported by consideration, and for that reason created no valid lien on Arthur's interest in the Fresno property. This contention is predicated on the argument that such note and assignment were given by Arthur to Landucci for an assignment of the latter's contract with Miller & Lux for the purchase of the Merced lands, and, so it is urged, that assignment was totally ineffective until approved by Miller & Lux, which approval was never secured. It is therefore contended that Arthur received no consideration for his note and assignment. The question presented is whether, as between Arthur Johnston and A. E. Landucci, the latter's assignment of the

Miller & Lux contract for the purchase of the Merced lands passed the interest of Landucci in such lands. If it did, the note and assignment by Arthur are amply supported by consideration and the judgment appealed from should be affirmed. If it did not, the deal between Landucci and Arthur was never consummated, Arthur never received the consideration bargained for, his note and assignment are unsupported by consideration, and the judgment should be reversed.

The argument that the Landucci-Arthur Johnston assignment of the Merced contract was ineffective to pass the interest of Landucci in that contract, is based on the following facts: The contract between Landucci and Miller & Lux for the purchase of the Merced lands is on a printed form prepared for the use of Miller & Lux. Printed paragraph, numbered 17, reads as follows: "Neither this contract nor any interest therein shall be assignable without the written consent of the seller." On the back of this printed contract there appears a printed form assignment, blanks being left for the signatures of the assignor and assignee, and for the approval of Miller & Lux. This printed assignment is in the usual form, except that the last sentence reads as follows: "This assignment is subject to the approval of Miller & Lux, Incorporated." This assignment was properly filled out, naming Arthur Johnston as assignee, was properly signed by Landucci as assignor, Arthur signed it, accepting the assignment, and it was delivered to and accepted by Arthur. The approval of Miller & Lux was never secured.

It is at once apparent that two questions are presented: (1) Does a provision prohibiting assignment without consent of the seller, such as that contained in paragraph 17, above quoted, prevent the interest of the buyer-assignor passing to an assignee, where such consent is not secured? (2) If an assignment without consent does pass the interest of the assignor to the assignee, where the assignment itself provides it is "subject to the approval" of the seller, is such assignment effective as between the assignor and assignee to pass the assignor's interest although no consent is ever secured?

Although there are no cases directly in point in California, the overwhelming weight of authority in other jurisdictions is to the effect that provisions against assignment, such as that contained in paragraph 17 of the Miller & Lux con-

tract, are for the benefit of the vendor only, and in no way affect the validity of an assignment without consent as between the assignor and assignee. In other words, the interest of the assignor in the contract passes to the assignee, subject to the rights of the original seller. This is the rule set forth in the Restatement of the Law of Contracts. Section 176 reads as follows: ''A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment or the obligor from discharging his duty under the contract in any way permissible if there were no such prohibition.''

The rule that such provisions are for the benefit of the seller and in no way affect the validity of an assignment as between the assignor and assignee is the rule adopted by the United States Supreme Court (*Portuguese-American Bank* v. *Welles,* 242 U.S. 7 [37 S.Ct. 3, 61 L.Ed. 116]), and is the rule approved by Williston in his work on Contracts (Williston on Contracts, Revised ed., vol. II, § 422). Although there are no cases in California dealing directly with the assignment of choses in action in violation of a provision against assignment, there are several cases which hold that the prohibition in a lease against assignment is for the benefit of the lessor, and that an assignment without consent passes the interest of the assignor to the assignee. (*Potts Drug Co.* v. *Benedict,* 156 Cal. 322 [104 P. 432, 25 L.R.A.N.S. 609]; *Garcia* v. *Gunn,* 119 Cal. 315 [51 P. 684]; *Randol* v. *Tatum,* 98 Cal. 390 [33 P. 433]; *Kendis* v. *Cohn,* 90 Cal. App. 41 [265 P. 844].)

It therefore follows, so far as paragraph 17 is concerned, that the assignment from Landucci to Arthur Johnston passed to the latter the interest of the former, subject to the rights of Miller & Lux.

Appellants do not seriously urge that paragraph 17 affected the validity of the assignment. ▇ Their main contention is that the assignment itself recited it was ''subject to the approval'' of Miller & Lux, and they argue that, as a matter of law, that phrase must be interpreted as rendering the otherwise completely executed and delivered assignment ineffective until the approval of Miller & Lux was secured. In other words, appellants urge that the quoted phrase, as a matter of law, compels the construction that securing such consent was a condition precedent to the taking effect of the

assignment, and that since such consent was admittedly never secured, the assignment never took effect and passed nothing to the assignee. That is a possible and reasonable interpretation of the phrase considered apart from the evidence. It has been held that where certain acts of parties are made by contract "subject to approval" or "subject to confirmation," the contract is not complete until such approval or confirmation is secured. (*State* v. *Stafford,* 97 Mont. 275 [34 P.2d 372]; *Manning* v. *Sams,* 143 Ga. 205 [84 S.E. 451]; *Allen* v. *Simmons,* 97 W.Va. 318 [125 S.E. 86]; *Cable Co.* v. *Hancock,* 2 Ga. App. 73 [58 S.E. 319].) But that interpretation is not inevitable. A more reasonable interpretation, in view of the evidence, is that such a phrase appearing in a printed contract prepared by the vendor, which contract itself contains a prohibition against assignment without consent, is intended to refer back to the provision against assignment in the contract and to call the assignee's attention to the fact that the assignment may be defeated by the vendor refusing its consent. (*Consolidated Coal Co.* v. *Peers,* 166 Ill. 361 [46 N.E. 1105, 38 L.R.A. 624]; *Shell Oil Co.* v. *Manley Oil Corp.,* 124 F.2d 714; *Atlantic Pacific Oil Co.* v. *Gas Development Co.,* 105 Mont. 1 [69 P.2d 750].) In other words, the "subject to approval" clause reasonably could mean that the vendor in preparing the form wanted to call the attention of an assignee to the fact that all assignments, so far as the vendor was concerned, were subject to its approval. Under this interpretation the "subject to approval" clause merely put into express words what otherwise was implied by virtue of paragraph 17, and has the same legal effect as paragraph 17. The trial court gave the clause this construction. ■ Where the construction given an instrument by the trial court appears to be consistent with the true intent of the parties as shown by the evidence, another interpretation will not be substituted on appeal although such other interpretation might, without consideration of the evidence, seem equally tenable. (*Hale* v. *Harbor Petroleum Corp.,* 139 Cal.App. 455 [33 P.2d 1039]; see, also *Teater* v. *Good Hope Dev. Corp.,* 14 Cal.2d 196 [93 P.2d 112]; *Kautz* v. *Zurich Gen. A. & L. Ins. Co.,* 212 Cal. 576 [300 P. 34]; *Estate of Boyd,* 24 Cal. App.2d 287 [74 P.2d 1049]; *Estate of Wilson,* 40 Cal.App.2d 229 [104 P.2d 716].) ■ That the construction given the assignment is consistent with the intent of the parties is amply demonstrated by the evidence. The record shows that the Landucci-

Arthur Johnston transaction was entered into under the supervision of a lawyer. He testified that nothing was said by either party about securing the consent of Miller & Lux to the assignment. The court found, and the finding is admittedly supported, that Landucci did not promise or agree to obtain the approval of Miller & Lux to the assignment. Immediately upon the completion of the deal Johnston delivered to Landucci his promissory note and his assignment, and Landucci delivered his assignment to Johnston. It is a reasonable inference that Johnston, who was fully familiar with such transactions, would never have delivered his promissory note to Landucci if he knew and intended that the assignment by Landucci was not complete until approval had been secured. The inference that he intended the deal to be complete upon delivery of the documents is strengthened by other matters shown by the evidence. Both parties knew that Miller & Lux had refused to sell the Merced property to Arthur Johnston. Apparently, Landucci was willing to take an unapproved assignment for the purpose of immediately re-assigning it to someone who would be acceptable. The evidence shows that during the very time that Arthur Johnston was negotiating with Landucci for the assignment of the Merced lands he was negotiating with a man by the name of Imperatrice to exchange the contract thus secured for a hotel in Fresno. Certainly, after Arthur Johnston received the assignment he did not treat it as an incomplete inchoate transaction. Without attempting to secure the consent of Miller & Lux, on the very day the Landucci-Johnston transaction was completed he entered into the proposed trade with Imperatrice, and as part of such deal deposited the Landucci assignment with the title company, and executed another assignment of the same to Imperatrice which was recorded. The deal with Imperatrice was not consummated for the reason that Imperatrice rescinded the transaction because of the asserted fraud of Arthur Johnston.

So far as Landucci is concerned, he certainly treated the assignment as a completed transaction. The evidence shows that after the date of the assignment he took no further steps to protect his substantial investment in that contract. He was apparently satisfied to rely upon reimbursement of his expenditures on the $9,000 note and its security. ▪ It is, of course, proper when a contractual provision is ambiguous, for the courts to look at the subsequent conduct of the par-

ties to ascertain how they construed the provision in question. The contemporaneous and practical construction of a contract by the parties is strong evidence as to the meaning of equivocal provisions. (*Mitau* v. *Roddan,* 149 Cal. 1 [84 P. 145, 6 L.R.A.N.S. 275]; *Keith* v. *Electrical Engineering Co.,* 136 Cal. 178 [68 P. 598]; *Retsloff* v. *Smith,* 79 Cal. App. 443 [249 P. 886].)

For the foregoing reasons we are of the opinion that the assignment of the Merced contract as between Landucci and Johnston passed Landucci's interest to Johnston. The note and assignment executed by Arthur Johnston were, therefore, supported by consideration.

The judgment appealed from is affirmed.

Gibson, C. J., Shenk, J., Curtis, J., Edmonds, J., Carter, J., and Traynor, J., concurred.

Appellants' petition for a rehearing was denied November 27, 1942.