[Civ. No. 12478.   First Dist., Div. Two.   Jan. 17, 1944.]

REPUBLIC PICTURES CORPORATION (a Corporation), Appellant, v. FLOYD ST. JOHN, Respondent.

Loeb & Loeb, Milton H. Schwartz, Frank M. Keesling and Adrian A. Kragen for Appellant.

Clarence A. Linn for Respondent.

NOURSE, P. J.—The plaintiff corporation, hereinafter referred to as Republic of New York, sued the defendant as guarantor of Republic Pictures Corporation of California to recover taxes assessed under the California use tax. The controversy arises over the interpretation of the distribution agreement of July 1, 1938. The trial court found that it did not obligate the defendant to reimburse plaintiff on account of such taxes paid and gave judgment for defendant. The appeal is grounded on an attack upon this finding.

The facts are fairly stated in respondent's brief from which we quote:

"Consolidated Film Industries manufactured certain motion picture films in its laboratories in California and New Jersey. It sold these films to Republic Pictures Corporation of Delaware (formerly Cajo Company) for use in the State of California.

"On these sales either one of two taxes were assessed, i.e., the California Sales Tax on the sale of films manufactured and used in California, or, the California Use Tax on the sale of films manufactured in New Jersey for use in California. The sales tax was assessed against the Consolidated Film Industries and by it passed on to and paid by Republic of Delaware. The use tax was assessed against and paid by the Republic of Delaware.

"The Republic of Delaware licensed the Republic of New York, the plaintiff herein, to distribute the motion picture films generally throughout the country and the New York corporation in turn sublicensed the Republic of California (defen-

dant's predecessor) to distribute the films in question in the State of California. . . .

"The contractual arrangements between Consolidated Film Industries, Republic of Delaware and Republic of New York were unknown to Republic of California. . . .

"Prior to the first part of 1936 films manufactured in California were furnished by Republic of New York to Republic of California and the sales tax was paid by Republic of Delaware; that thereafter films manufactured in New Jersey were furnished and the sales tax was avoided. No use tax was ever paid until late in 1940. . . .

"Republic of Delaware was assessed additional penalties and interest for its failure to make the proper returns and payments. Republic of New York paid these assessments although the State of California never at any time asserted any liability against anyone other than Republic of Delaware. Republic of New York claimed that it was bound to do so by its contract with Republic of Delaware, a contract to which Republic of California was not a party and of which it was unaware.

"The contract between Republic of New York and Republic of California was drafted by Republic of New York."

The pertinent portion of the distribution agreement reads: "The Distributor agrees, at its own expense, to pay or cause to be paid, all costs, charges and expenses of distributing and/or sub-licensing the exhibition of and of advertising and/or exploitation, of each and all the pictures in the licensed territory, of every nature whatsoever, and all obligations and liabilities incurred by Distributor in connection therewith, including, but without being limited to, all expenses for transportation, shipment and delivery, of prints, advertising materials and accessories, all censorship fees and charges, and all municipal, county, state and/or federal, and all other taxes and/or fees, and/or charges, that may be levied or assessed, on account of or arising out of, the distribution, licensing, sub-licensing, leasing, or sub-leasing, the exhibition of, and/or exploitation of, all or any of the pictures, or all or any prints thereof, or the presence of any or all such prints, in the licensed territory, or any other act or thing done or caused or permitted to be done by Distributor on account hereof."

It is the contention of respondent that by this agreement he undertook to pay all taxes "incurred by Distributor" and did not undertake to pay sales taxes chargeable to the purchaser or use taxes levied in lieu thereof upon sales outside the State of California; that for several years after the execution of

the contract the sales taxes were paid by the Republic of New York without protest or controversy, and that this was a practical interpretation of the contract by the parties.

In support of the judgment the respondent relies upon sections 1649 and 1654 of the Civil Code which read: "If the terms of a promise are in any respect ambiguous or uncertain, it must be interpreted in the sense in which the promisor believed, at the time of making it, that the promisee understood it." And "In cases of uncertainty not removed by the preceding rules, the language of a contract should be interpreted most strongly against the party who caused the uncertainty to exist. . . ." It is apparent at once that the contract is ambiguous. If the respondent's associates were merely distributors, and not purchasers, the sales taxes charged upon sales of films made in this state would not be taxes "incurred by Distributor." The parties so interpreted the contract and the Republic of Delaware paid those taxes. This was an interpretation of the terms of the contract upon which the respondent was entitled to rely when the subsequent charges were levied under the California use tax and the appellant endeavored to hold him liable for the taxes paid. At least the contract terms were ambiguous in that respect and called for an interpretation by the trial court.

We are in full accord with the conclusions reached by the trial court; the evidence of the intention of the parties was admissible for the reasons heretofore stated, and that evidence fully supports the findings of fact and conclusions of law. Technical rules of evidence must often give way to the settled rule of the Civil Code that "A contract must be so interpreted as to give effect to the mutual intention of the parties as it existed at the time of contracting, so far as the same is ascertainable and lawful." (Sec. 1636.) And when the true intent of the parties is shown by the evidence and followed by the trial court another interpretation will not be substituted by the appellate court, though such interpretation may also seem reasonable. (*Johnston* v. *Landucci*, 21 Cal.2d 63 [130 P.2d 405].)

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied February 16, 1944, and appellant's petition for a hearing by the Supreme Court was denied March 16, 1944. Carter, J., and Traynor, J., voted for a hearing.