Alton F. GIPS et ux., Appellants,

v.

RED ROBIN CORPORATION et al., Appellees.

No. 14055.

Court of Civil Appeals of Texas.

Houston.

March 21, 1963.

Rehearing Denied April 18, 1963.

854

Herman D. Voorhees, Fred R. Harmon, Houston, for appellants.

Kucera, Lay & Lightfoot, Bennett Lay, Houston, for appellees.

BELL, Chief Justice.

Appellants sued Red Robin Corporation, John F. Donnelly and Robert L. Robinson, to recover the cash deposit they had made as earnest money and as part of the purchase price, for the purchase of the Gulf Wind Motel from W. A. Patton and wife. On trial to the court without a jury, the court sustained appellees' motion for judgment made at the end of appellants' testimony.

On August 28, 1959, a contract was made between the Pattons and appellants. The Red Robin Corporation was the real estate representative of the sellers acting through Mr. Robinson. A form "Contract of Sale and Receipt of Earnest Money" was used. It provided that the Sellers agreed to sell and convey to the Purchasers the described property. The purchase price was to be $77,500.00. $3,000.00 was paid by appellants as earnest money, which was to be applied on the purchase price. After the $3,000.00 cash was applied to the purchase price a balance of $74,500.00 would be owed. The contract provided that Sellers would execute a "contract for deed" until a first lien held by Gibraltar Savings and Building Association in the approximate amount of $10,800.-00 was paid. When this was paid off at the rate of $276.00 per month, Sellers were to execute a general warranty deed to Purchasers and furnish a "Guaranteed Title Policy."

It is provided that because of the small down payment, the Purchasers would furnish additional security in an amount not less than $10,000.00, which shall be properties on which Purchasers hold a second mortgage or contract for deed. The properties were to be in the Bellaire area. A list of the properties was to be made on a separate sheet.

It also appears that there was a second lien held by Mr. and Mrs. H. L. Botts in the approximate amount of $39,000.00 payable at the rate of $249.00 per month except

that when the Gibraltar lien was paid the installments to Botts would increase to $400.00 per month. The third lien in the amount of $24,700.00 would be paid to Sellers at the rate of $250.00 per month. It was provided that when the lien to Gibraltar had been discharged, appellants would execute a note and deed of trust to the Botts.

The above provisions were typewritten on the form contract. There then appears this provision partially typed and partially printed: "Seller agrees to furnish Contract for Deed to said property, which shall be conveyed free and clear of any and all encumbrances except those named herein." The term "Contract for Deed" was typewritten. The rest of the sentence was printed. There follows a paragraph in the printed form providing that if any objections to title are made, then Seller shall have a reasonable time to cure said objections to show good and marketable title. Further it provides in the event of failure to show good and marketable title, Purchaser may upon cancellation and return of the contract obtain a return of the cash deposit, or Purchaser may obtain specific performance. Another part of the printed form provides that should the Purchaser fail to consummate the contract as specified for any reason, except title defects, Seller shall have the right to retain said cash deposit as liquidated damages, and shall pay the agent therefrom the usual commission, or Seller may have specific performance.

Following the above is a typewritten provision as follows: "Closing shall be as soon as the papers can be drawn and executed which shall be not more than 30 days." Too, there is a provision for payment of a 6% commission to Red Robin Corporation.

By their second amended original petition appellants allege the making of the contract and the substance of it. They then allege that the Pattons, as Sellers, did not have record title but were merely parties to a "Contract for Deed" wherein H. L. Botts et ux. were Sellers and W. A. Patton et ux. were Buyers and that such contract contain-

ed this "Covenant": "Buyer shall not sell, assign, or transfer this contract or any interest in said property, without the written consent of Seller." Appellants then alleged this was concealed from them and they would not have deposited the $3,000.00 except for their reliance on appellees' implied assurance that the Pattons could deliver a marketable title to said property. Then the allegation is made that appellees failed and refused to obtain the written consent of the Botts to the contract between appellants and the Pattons and therefore appellants received nothing for the $3,000.00, that is, no consideration passed from appellees to appellants.

Then there is the allegation that appellees did not advise appellants in writing that they should have an abstract covering the property examined by an attorney of their choice, or that a title policy should be obtained. This is required by Article 6573a, Sec. 28, Vernon's Ann.Tex.Civ.St. Appellants then allege they have also been damaged to the extent of $2,000.00 by appellees' unlawful retention of the $3,000.00, and then pray for recovery of the $3,000.00 earnest money and $2,000.00 damages.

Appellees filed a general denial.

The contract between the Pattons and appellants was introduced. Also the contract between the Botts and the Pattons was introduced. It was an ordinary contract between the owner of property and the purchaser under which the Seller agrees to sell and convey and the Buyer agrees to purchase certain real estate. It is not necessary to notice its terms except it provides that when the note to Gibraltar Savings and Building Association has been paid, the Botts will execute a deed to the Pattons and will furnish a "Guaranty of Title" and the Pattons will increase their payments to the Botts to $400.00 per month. The contract contains the non-assignment provision above quoted.

We need only give the substance of the testimony. Mr. Gips signed the sales con-

tract and gave his check for $3,000.00 to Mr. Donnelly. He didn't remember that he ever demanded a title policy from anyone but he wanted some kind of policy that would guarantee the title. He knew the Pattons were purchasing under a contract because he had talked to Mr. Patton several times after the contract was signed. The contract was signed at the Motel. He saw the Pattons sign. No "Contract for Deed" was ever presented him for execution. Mr. Donnelly told him to get an attorney to examine the title. *Mr. Patton told him Mr. Botts had to give his approval to the contract.* His main objection was to putting up the collateral where he could not get it released in case of refinancing or for some other reason. Mr. Gips' attorney, on September 28, 1959, thirty one days after the contract of sale was signed, wrote Mr. Patton's attorney stating the income of the Motel had been greatly overstated and that Mr. Gips wanted to repudiate the contract because of such fraud. However, the letter also stated Mr. Gips would go ahead with the contract if the requirement for the collateral security was eliminated and if the payments to the Pattons were reduced by $100.00 per month. Nothing was stated in the letter about title or the failure of Mr. Botts to deliver a contract. Mr. Gips had demanded of appellees the return of the cash deposit, but it had never been returned. On December 2, 1959, Mr. Gips' attorney wrote Red Robin Corporation formally demanding the return of the money and stating that in order to protect Mr. Gips the sales contract was being filed for record, but it would be released on the return of the money. Too, the letter stated that Mr. Botts had to give his permission to the sale and he refused to do so. The contract between Mr. Botts and the Pattons was not of record, according to the letter. Mr. Gips did not remember whether he ever put up the collateral, but he gave a list of the collateral. Mr. Botts did not give his consent to the sale to appellants. He says he knew nothing about it until it was all over with. He stated he thought he told Mr. Robinson

or Mr. Donnelly he would not consent to the sale. He knew he wouldn't give his consent. The property was later sold to a Mr. Palmer and Mr. Botts gave his consent. The money that was deposited by Gips was deposited in the account of Red Robin Corporation. None of it was ever given to the Pattons. Mr. Donnelly had never talked to Mr. Botts, according to his testimony. Mr. Robinson was the one handling the contract. Mr. Robinson, in response to questions of appellants' counsel, testified Mr. Patton told him Mr. Gips had backed out of the contract and Mr. Robinson should go ahead and keep the cash deposit. Mr. Robinson advised Mr. Gips to get the contract fixed up and get things going. Mr. Robinson said he advised Mr. Botts of the contract between the Pattons and appellants which called for a contract for deed. He asked Mr. Botts for the balance due on various liens. He read the contract between him and the Pattons and asked if there were any other instruments. Mr. Botts did not indicate he would not give his consent to the sale to appellants. Mr. Botts gave him the balances on the various liens as shown in the sales contract between Mr. Patton and appellants. Mr. Patton recognized Mr. Robinson's right to the commission to be paid out of the cash deposit as provided in the contract. Later Mr. Patton asked for one-half of it but did not get it. Neither Mr. Gips nor his representative ever asked for a title policy. Mr. Markham drew the contract and Mr. Gips, through his attorney, refused to sign.

Appellants' theory of recovery is that the Pattons were never in a position to convey anything to them because they held only under a contract to purchase which forbids an assignment of such contract or any interest in the property, so there was complete failure of consideration. They further say appellees and not Patton are liable to them because they were trustees in holding the earnest money and they need not sue Patton, the seller.

Appellees contend that appellants breached the contract because they were unwilling

to put up the collateral security called for by the contract of sale when such contract provides that if the Purchaser failed to perform for any reason except for defects in title the earnest money shall be forfeited and out of said money the agent shall be paid his commission. They further contend appellants were under a duty to inform appellees or the Seller of any defects in title so as to give Seller an opportunity to cure the defect, and appellees never made any complaint as to title. Too, they say there was no privity of contract between them and appellants and that appellants should proceed against Mr. Patton.

■ The trial court made no findings of fact so we must presume he found every fact finding support in the evidence in a manner so as to support the judgment.

■ The contract of sale calls for the execution within thirty days after August 28, 1959, of what is spoken of as a "Contract for Deed." We assume by such is meant an agreement by appellants to purchase and of the Pattons to sell the property with an agreement that on payment of the debt to Gibraltar the Pattons would execute a deed conveying the property with appellants assuming the then existing indebtedness. In the interim we suppose appellees were to satisfy themselves that the Pattons, except for the liens above mentioned, had a marketable title. There is no provision in the contract of sale for the Pattons to furnish an abstract of title or any title insurance until the debt to the Gibraltar should be paid. However, that marketable title is contemplated before the execution of the contract for deed is evidenced by the provision authorizing the purchaser to cancel the sales contract if there was failure to furnish good and marketable title. Also there is the provision that if title objections were made the Pattons would have a reasonable time to cure the defects.

■ We are unable to agree with appellants, however, that the Pattons could not convey them anything because of the provision in the contract of sale between the Pattons and the Botts that the Pattons could not assign the contract or any interest in the property without the written consent of the Botts. We are of the view that in spite of this provision the Pattons could transfer their equitable interest in the property. While such would not be effective to relieve the Pattons of any duty they owed the Botts, it would transfer their equitable interest in the property. The Pattons would still be fully bound to perform their contract and make payments as provided in their contract with the Botts. The only ultimate right the Botts had was to payment of the purchase price. While the Botts might not be required at any time to execute a deed directly to appellants, they could be required to execute a deed to the Pattons as provided in the contract between them. Of course by transferring their equitable interest the Pattons would be violating their covenant. However, there is no provision in the contract between the Pattons and the Botts that gives the Botts a right to terminate the sales contract for breach of this covenant. There is a provision for termination for failure to perform other obligations. Forfeitures are not favored and will not be implied. The Botts would be left to sue for damages for breach of the covenant.

We have been cited to no Texas case and, in our search, have found none. We have, however, found authorities from other jurisdictions supporting this position. Hull v. Hostettler et al., 224 Mich. 365, 194 N.W. 996; Cutler v. Lovinger et al., 212 Mich. 272, 180 N.W. 462; Johnston v. Landucci, 21 Cal.2d 63, 130 P.2d 405, 148 A.L.R. 1355.

It may be that the absence of Botts' consent would prevent the title from being a marketable one, since the appellants, as assignees, might be confronted with defenses by Botts that Botts would have against the Pattons, because the assignment could not affect Botts' rights against Patton. It does not, however, present a failure of consideration.

■ The trial court has held appellants failed to perform their contract and thus not to be entitled to a return of the earnest money. We take it that the basis of the holding is that appellants never made any complaint of title but repudiated the contract because they did not want to put up the collateral security called for by the contract of sale and because the monthly payments were too high. There is no testimony showing any complaint about title until December 2, 1959, when the contract of sale was to have been performed by September 27. Appellants made no requirement of written consent though Mr. Gips knew that the consent was called for. The only complaint made by appellants was refusal to put up the collateral security and asking a reduction in monthly payments of $100.00. These complaints were in the letter dated September 28. We must presume the trial court found appellants to be under a duty to make objections to title. There is no express provision for this but we think the language of the contract clearly implies appellants shall do so. The contract provides in part "if any title objections are made." Who would make them except appellants or their attorney? Then it provides that if title objections are made, "Seller or his agent shall have a reasonable time to cure said objections." This shows an intent that the purchaser must make his objections to the sellers or their representatives.

■ Where a purchaser is obligated to make title objections, he must do so or he cannot complain of the absence of marketable title. He must communicate such to the seller or his representative so they may attempt to satisfy the objections. Lieber v. Nicholson et al., 206 S.W. 512 (Tex.Com. App.); Champion v. Taylor et ux., 229 S. W. 627 (Tex.Civ.App.), no writ hist. While Mr. Botts testified at the trial he would not give his consent and thought he told either Mr. Donnelly or Mr. Robinson, the court had a right to accept Mr. Robinson's testimony that Mr. Botts, when he talked to him, never made any complaint of the sale.

■ The contract provides that if the purchaser fails to perform the contract for any reason except title defects, then the seller shall have the right to retain said cash deposit as liquidated damages and shall pay the agent therefrom his commission. The evidence is sufficient to show that appellants refused to perform the contract, not because of any defect in title, but because they did not want to put up the collateral security called for and because they wanted the monthly payments reduced $100.00 per month.

■ Appellants assert appellees were not in a position to rely upon appellants' default but the Pattons must do so. There is testimony that Mr. Patton had authorized the appellees to keep the money as their commission. Too, in the light of the provision that from the cash deposit the agent should be paid his commission, appellees have such an interest in it as to be able to defend against Purchasers' suit for its return by showing default on the part of the Purchasers.

We do not think Article 6573a, Sec. 28, is applicable because this is not a suit by appellees to recover the commission. Too, the evidence shows appellants were being represented in the transaction by an attorney.

■ Appellants say the judgment is contrary to Articles 3995 and 4004, V.A.T.S. They did not plead these statutes.

■ Finally, appellants complain that the trial court erred in not allowing them to prove damages which they suffered because of the refusal of appellees to pay the $3,000.00. They had alleged additional damages of $2,000.00. What the testimony would have been is not shown in the record and we cannot therefore appraise this complaint.

The judgment of the trial court is affirmed.