[Civ. No. 26581.  Second Dist., Div. Four.  May 13, 1963.]

REGINALD S. F. DAWSON et al., Plaintiffs and Appellants, v. STANDARD OIL COMPANY OF CALIFORNIA, Defendant and Respondent.

David M. Garland for Plaintiffs and Appellants.

Lawler, Felix & Hall and John G. Wigmore for Defendant and Respondent.

BISHOP, J. pro tem.*—The plaintiffs, claiming that the defendant had a continuing obligation to account to them for a percentage of the value of the oil, and other hydrocarbon substances, that it obtained by slant drilling from under their land, brought this action for a declaratory judgment. The defendant not only confirmed the existence of differing views, by answer, but also filed a cross-complaint in interpleader, naming the plaintiffs and two others, Paula L. Lawrence and Fred W. Marlow, as cross-defendants. Later, by stipulation, a cross-complaint for declaratory relief was substituted for the original cross-complaint.

At the trial evidence was "introduced by way of diverse documents and stipulated facts," as the judgment recites, and the cause was submitted on them. Judgment was then entered decreeing, first, that "Standard has no obligation whatsoever nor has Standard ever had any obligation under that certain agreement, hereinafter referred to as the Stocker Strip Agreement, dated April 4, 1951 by and between George C. Stroebe and Sue C. Stroebe, as Grantor, and Standard, as Grantee, and in particular Paragraph 3 thereof, to account for and pay to Reginald S. F. Dawson and Ilene M. Dawson, or either of them, any sums or other moneys whatsoever including but not limited to any sums representing a proportionate share of the sale value of 2½% of all oil, gas and gasoline produced, saved, sold and extracted by means of slant wells drilled through the Stocker Lands referred to in said Stocker Strip Agreement; ... "

Additional provisions of the judgment declared that payments made and to be made by the defendant to "Paula L. Lawrence . . . and Fred W. Marlow" constituted a satisfaction and discharge of its obligation under paragraph 3 of the Stocker Strip Agreement. As we deem that that which aggrieved the plaintiffs, causing them to appeal, was the first provision of the judgment, the one that we have quoted, we are not setting forth the terms of the remaining paragraphs of the judgment.

Interestingly enough, plaintiffs were not parties to the Stocker Strip Agreement; yet it is the document upon which they base their contention that it is to them that Standard should account for at least a part of a "proportionate share of the sale value of 2½% of the oil, " etc. that Standard abstracts. Plaintiffs stand last in line as grantees under the

*Retired judge of the superior court sitting pro tempore under assignment by the Chairman of the Judicial Council.

instruments mentioned in the stipulation of facts upon which the judgment is based. The first, dated April 4, 1951, was the "Stocker Strip Agreement" referred to in the judgment. As to the terms of this agreement it suffices now to say that it was a grant by the owners, the Stroebes, to defendant Standard of "a right of way and easement to drill slant wells" into and through the Stroebes' lot 3, the wells at no point to be less than 100 feet below the surface.

The Stroebes, in June of 1952, deeded the land (lot 3) to Denzell D. Lawrence and Fred W. Marlow, and, by the same deed, assigned all of their right, title and interest in and to the Stocker Strip Agreement. This paragraph of the deed will become of interest: "There are specifically included within the title and interests hereby granted the 'retained interests' as defined and referred to in the [Stocker Strip Agreement]."

Now the plaintiffs' names first appear. By a deed, dated September 28, 1953, Denzell D. Lawrence and Fred W. Marlow granted "a portion" of lot 3 to the plaintiffs. To quote further from the stipulation of facts: "By said deed the parties thereto, namely Denzell D. Lawrence and Fred W. Marlow, as grantors, and Dawsons, as grantees, intended that the surface and the upper 100 feet of the subsurface of said land together with the dwelling and improvements situate thereon be conveyed to Dawsons; and, to reserve to Denzell D. Lawrence and Fred W. Marlow the subsurface underlying said land below the depth of 100 feet beneath the surface thereof together with the right to receive a proportionate share of the sums representing the sale value of $2\frac{1}{2}\%$ of all petroleum products produced from the leased lands by means of the slant wells drilled through the Stocker Lands as provided by Paragraph 3 of said Stocker Strip Agreement."

The stipulation fairly reflects the intent of the parties as expressed in the deed, which granted to the plaintiffs "that part" of lot 3 "lying above a depth of one hundred feet (100') below the surface thereof, . . . reserving and excepting unto the grantors, however, that portion of the subsurface of said lots and parcels of real estate lying below the depth of one hundred feet (100') beneath the present surface thereof, together with all oil, gas, and other hydrocarbon and mineral rights in and to the said described real property, but with no right of entry upon or through said real property except beneath a depth of one hundred feet below the present surface thereof.

"This conveyance is expressly made subject to, and there

is hereby excepted herefrom and reserved unto the grantors all of the right, title, and interest of grantors and each of them in and under [the Stocker Strip Agreement]."

Contrasting this deed to plaintiffs with that of the Stroebes to plaintiffs' grantors, it becomes plain that the Stroebes' deed granted all of lot 3 to Lawrence and Marlow, while the one to plaintiffs conveyed only the surface and uppermost 100 feet of the lot. Stroebes' deed assigned to Lawrence and Marlow all their rights under the Stocker Strip Agreement, which included the right to receive from Standard the payments based on the "sale value" of the oil, and other substances, taken by it. In the deed to the plaintiffs, the right of the grantors under the Stocker Strip Agreement is expressly "excepted herefrom and reserved unto the grantors."

One more term appearing in the deed to Lawrence and Marlow and in their deed to the plaintiffs remains to be noted, the words "retained interests." These, too, passed from the Stroebes to Lawrence and Marlow. These, too, were intentionally not conveyed to the plaintiffs.

The plaintiffs in their opening brief contend that "there is a total and irreconcilable conflict between the granting clause and the reservation and exception clause." And in their reply brief they begin with the heading, "The Grant Deed Dated September 28, 1953, From Marlow and Lawrence to the Dawsons Is Completely Ambiguous." If these two statements are correct, it may be that the deed is too indefinite to create any rights in plaintiffs. But there is no other deed or agreement upon which plaintiffs can rest any claims against the defendant. If they have a good claim to even the surface of lot 3, it depends upon this deed.

There is a basis for criticizing the draftsmanship of the documents involved in this action, but the premise on which plaintiffs' criticism is based is not accurately stated. They note, properly, that the granting clause of the deed to them provides that they were to receive that part of lot 3 lying above a depth of 100 feet below the surface of the lot. Then they say: "The grantors further purport to reserve and except all of the right, title and interest of grantors *in the real property* as *described and defined* in [the Stocker Strip Agreement]." If the words that we have italicized were a part of the reservation and exception, plaintiffs would have a point for, of course, a part of the real poperty thus reserved and excepted from the conveyance was the upper 100 feet which had just been expressly conveyed. But—the italicized

words do not appear in the deed. The deed expressly grants to the plaintiffs the part of lot 3—that is its top 100 feet—"reserving and excepting," first, all below 100 feet, and then reserving and excepting "all of the right, title, and interest of grantors and each of them in and under, [the Stocker Strip Agreement]." To be sure, the grantors had, by the Stroebes' deed, acquired the real estate as well as the right to the payments to come from Standard. But the exeception and reservation did not mention "the real property as described and defined" in the Stocker Strip Agreement.

One of two conclusions follows from the wording that is used: either (1) effect is to be given to the conveyance expressly mentioned, that of the upper 100 feet, and the reservation and exception are to be understood as referring to the "other" rights the grantors had "in and under" the Stocker Strip Agreement, or (2) the two do cancel each other out.

The plaintiffs offer a third interpretation: divide the rights to Standard's payment between plaintiffs, who were granted the top 100 feet of lot 3, and Lawrence and Marlow, who kept all of the lot below 100 feet. This solution would be to rewrite, not interpret, the deed. We find it, as apparently the trial court found it, a meaning not possibly encompassed in the deed.

The Stocker Strip Agreement contains many provisions that we have not considered. If the one deed that mentions the plaintiffs contained any reference to the Stocker Strip Agreement that added to plaintiffs' rights, over those expressly conferred, we would weigh the agreement's provisions here. ▉▉▉ As already noted, its "retained interests" are not given plaintiffs, but kept by plaintiffs' grantors. It may be argued, from the agreement, that the Stroebes could not validly separate the right to receive payments from Standard from the owership of the surface, plus 100 feet of lot 3, and that as a consequence the grantees from the Stroebes could not do so either. If this should prove to be true, it would not follow that plaintiffs were entitled to receive Standard's payments, for very definitely that right was excepted and reserved. The provisions here considered were for the benefit of the covenantee, Standard, and a conveyance or reservation of an interest in real property in derogation of such a covenant is valid subject to the rights of the covenantee. (*Johnston* v. *Landucci* (1942) 21 Cal.2d 63, 67-68 [130 P.2d 405].) The covenantee, Standard, could consent to or waive the breach of any such provision.

When plaintiffs accepted the deed dated September 28, 1953, they had notice of the terms of the Stocker Strip Agreement prohibiting the reservation of the right to receive payments apart from the so-called ''retained interest.'' They were parties to the reservation in derogation of the covenant and accordingly participated in a breach of contract connected with the very transaction concerning which they ask for a decree in their favor. They invoke the equitable remedies of declaratory relief and accounting which they are estopped from doing. (*DeGarmo* v. *Goldman* (1942) 19 Cal.2d 755, 764-765 [123 P.2d 1].)

Accordingly, the deed to plaintiffs must be construed to effect its obvious intent, namely, a transfer of the real property interest in the upper 100 feet of subsurface property reserving to grantors, with the consent of Standard, the oil payments resulting from the slant drilling.

The judgment is affirmed.

Burke, P. J., and Jefferson, J., concurred.