In re Adam HOLL, Jr., and Margie
M. Holl, Debtors.

Bankruptcy No. 80–00077.

United States Bankruptcy Court,
D. Hawaii.

Sept. 3, 1981.

Nick Dreher, Honolulu, Hawaii, for First Hawaiian Bank.

Scott Nakagawa, Honolulu, Hawaii, Trustee.

Randolph Slaton, Honolulu, Hawaii, for Adam Holl.

Ken Takenaka, Honolulu, Hawaii, for Vendors.

Gaylord Tom, Stanton & Clay, Honolulu, Hawaii, for Lewers & Cooke.

Elliot Enoki, Asst. U. S. Atty., Honolulu, Hawaii, for IRS.

## FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER

JOHN J. CHINEN, Bankruptcy Judge.

Hearings on the Trustee's Application to Abandon and on the distribution of proceeds of sale of the Debtors' property were held before this Court on September 24, 1980, October 2, 1980, January 26, 1981, March 13, 1981, March 20, 1981 and March 27, 1981. This Court has considered the testimony of the witnesses, affidavits, memoranda and argument of parties and counsel, and is otherwise fully informed, and hereby makes the following Findings of Fact and Conclusions of Law:

### FINDINGS OF FACT

1. Adam Holl, Jr. and Margie M. Holl, the Debtors herein, filed their petition under Chapter 7 of the Bankruptcy Code on February 12, 1980.

2. At the time of the filing of the petition, the Debtors owned an interest as vendees under an Agreement of Sale to certain real property located at 1136 Puolo Drive, Honolulu, Hawaii.

3. The Agreement of Sale provides, in part, as follows:

> The Buyer shall not, without obtaining in advance the written permission of the Seller, in any way transfer, diminish or encumber the Buyer's interest in the property or in the Agreement.

4. After the filing of the petition, the Trustee, with authorization from the court, sold the Debtors' interest in such property by way of a sub-agreement of sale. The selling price was $95,000.00, with a cash down payment of $22,000.00, a deferred payment of $73,000.00, made in monthly installment payments of $750.00.

5. The following have claimed lien rights to such proceeds:

a. Lewers & Cooke
b. First Hawaiian Bank
c. Internal Revenue Service
d. Rose Albano

### I. Claim of First Hawaiian Bank

6. On or about March 21, 1978, the Debtors executed and delivered to First Hawaiian Bank (FHB) that certain Collateral Assignment of Buyer's Interest in Agreement of Sale to secure two promissory notes in favor of FHB, in the original principal amounts of $20,000.00 and $13,000.00, respectively. Said Collateral Assignment was filed on March 22, 1978 in the Office of the Assistant Registrar of the Land Court of the State of Hawaii, hereafter "Land Court", as Document No. 865803 and noted on Transfer Certificate of Title No. 198,261. The $20,000 note has been paid by a co-guarantor of the corporate note.

7. The Debtors did not obtain the consent of the Vendors to the assignment made to FHB.

8. The Vendors have not sought to enforce the provision of the Agreement of Sale requiring consent to transfer and have

agreed to waive this provision so long as the payments required under the Agreement of Sale are paid when due.

9. The promissory note dated March 9, 1978 in favor of FHB, executed by the Debtors in the original principal amount of $13,000.00, provides, in part, as follows:

Upon any of the foregoing events of default, Borrower agrees to pay all collection, court costs and attorneys' fees reasonably incurred by the Bank, whether or not suit is filed.

The promissory note also provides for the accrual of interest at the rate of 14.04% per annum.

10. The principal balance due on this promissory note is $8,553.34.

11. The unpaid interest accrued on this promissory note as of April 3, 1981 is $1,378.51. Interest continues to accrue on the principal balance at the rate of $3.29 per day.

12. The attorney's fees incurred by FHB in connection with its attempts to collect this promissory note from February 12, 1980 to April 3, 1981 amount to $4,784.00.

## II. *Claim of Internal Revenue Service*

13. Four tax liens on behalf of the IRS, United States of America, were filed on June 12, 1979, at the Bureau of Conveyances, State of Hawaii, Honolulu, Hawaii on the Debtor's property, the proceeds from the sale of which form the basis of this litigation.

14. The liens arose from income taxes owed for the tax periods 1974, 1975, 1976 and 1977.

15. The taxes were timely assessed and the liens timely filed.

16. The amounts of pre-petition principal, interest, and penalty owed IRS under the four liens are those reflected on the Proof of Claim filed in this Court on October 17, 1980, totalling $9,760.44.

## III. *Claim of Lewers and Cooke, Inc.*

17. The claim of Lewers and Cooke, Inc., hereafter "Lewers & Cooke", is based on

two instruments. The first is an "Assignment of Agreement of Sale as Security", dated July 24, 1979, which was filed with the Land Court of the State of Hawaii after the bankruptcy petition had been filed on February 12, 1980.

18. The second document is a Judgment in favor of Lewers & Cooke against the Debtors based on the same claim as the Assignment. The Judgment was filed in the Land Court on December 5, 1979, as Document No. 983594.

## IV. *Claim of Rose Albano*

19. Rose Albano claims a lien on the proceeds from the sale of the Agreement of Sale by virtue of the fact that she was the real estate salesperson that sold the property. However, her employment as the real estate salesperson had not been previously approved by this Court. Ms. Albano failed to file any written application or any memorandum supporting her position.

## CONCLUSIONS OF LAW

1. This Court has jurisdiction over the parties and the subject matter involved in this proceeding.

## I. *Claim of First Hawaiian Bank*

2. The Debtors' primary objection to the claim of FHB is that the Vendors under the Agreement of Sale did not consent to the Assignment of said Agreement of Sale. The Court finds this argument without merit in this case.

3. The provision of the Agreement of Sale prohibiting assignment by the Debtors without the advance written consent of the Sellers is a covenant for the exclusive benefit of the Sellers and may only be asserted by the Sellers. Neither the Debtors nor the Trustee may assert this provision to invalidate the assignment made to First Hawaiian Bank. *Portuguese-American Bank of San Francisco v. Welles*, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116 (1916);

*Johnston v. Landucci*, 21 Cal.2d 63, 130 P.2d 405 (1942); 148 A.L.R. 1361 (1944); *Restatement of Contracts*, Section 176 (1932).

4. *Johnston v. Landucci, supra*, involved facts similar to the instant case. In that case, the court addressed the question of whether a provision prohibiting assignment of a land sale contract without obtaining the consent of the vendor invalidated the assignment of the contract by the vendee, if such consent was never obtained. The land sale contract which contained a clause similar to the clause in the instant case, read as follows: "Neither this contract nor any interest therein shall be assignable without the written consent of the seller." The court held that an assignment of a land sale contract without consent of the vendor was not void. The court stated:

> [T]he overruling weight of authority in other jurisdictions is to the effect that provisions against assignment . . . are for the benefit of the vendor only, and in no way affect the validity of an assignment without consent as between the assignor and assignee. In other words, the interest of the assignor in the contract passes to the assignee, subject to the rights of the original seller. *Id.* at 408.

5. The general rule is stated in the *Restatement of Contracts*, Section 176 (1932) as follows:

> A prohibition in a contract of the assignment of rights thereunder is for the benefit of the obligor, and does not prevent the assignee from acquiring rights against the assignor by the assignment or the obligor from discharging his duty under the contract in any way permissible if there were no such prohibition.

6. This rule was recognized by the United States Supreme Court in *Portuguese-American Bank of San Francisco v. Welles*, 242 U.S. 7, 37 S.Ct. 3, 61 L.Ed. 116 (1916). In that case (which was an appeal from the United States Circuit Court of Appeals for the Ninth Circuit), the Court held that an assignment of a progress payment under a contract without the consent of the obligor was valid, notwithstanding a provision in the contract prohibiting such assignment without the consent of the obligor.

7. In addition, in the instant case, the attorney for the Vendors has stated in open court that the Vendors have no objection to the Assignment so long as they are paid under the Agreement of Sale.

8. The Assignment of the Agreement of Sale was properly filed in the Land Court more than 90 days prior to the filing of the petition. FHB thus is the holder of a valid perfected first security interest in and to the Debtors' interest under the Sub-Agreement of Sale, securing the promissory note dated March 9, 1978, in the original principal amount of $13,000.00.

9. FHB is allowed interest on its claim at the rate stated in the promissory note, and any reasonable fees, costs or charges provided under the promissory note, including attorneys' fees, to the extent that the claim is secured by property having a value in excess of the total of such principal, interest and attorneys' fees, 11 U.S.C. Section 506(b).

10. FHB is entitled to receive a distribution of the proceeds of the Sub-Agreement of Sale to pay its claim in full, subject only to the provision of adequate assurances to the Vendors under the Agreement of Sale that the amounts payable to them under the Agreement of Sale will be paid when due.

## II. *Claim of Internal Revenue Service*

11. The Debtors acknowledge the debt to the IRS, which has a valid lien. The Court thus finds that after satisfaction of the amount due FHB, the proceeds shall be applied to payment of $9,760.44 to the IRS prior to any other disbursement, as that claim is second in priority.

## III. *Claim of Rose Albano*

12. The Court finds that Ms. Albano has not filed any claim in Court against the

proceeds and has not complied with the applicable statutes and rules of Court regarding compensation under the Bankruptcy Code. The Court thus denies any claim of Ms. Albano against the proceeds of the sale.

## IV. *Claim of Lewers & Cooke, Inc.*

13. The Assignment of Agreement of Sale as security dated July 24, 1979 was filed with the Land Court after the petition for relief had been filed on February 12, 1980. On the other hand, the Judgment in favor of Lewers & Cooke, based on the same claim as the Assignment, was filed in the Land Court on December 5, 1979, which was prior to the filing of the petition for relief.

14. 11 U.S.C. § 544 states that the Trustee has the power to void any transfer of property of the Debtor that is voidable by a hypothetical lien creditor or a bona fide purchaser as of the commencement of the case. The Judgment lien of Lewers & Cooke filed in the Land Court on December 5, 1979 was fully perfected on the day the Petition for Voluntary Bankruptcy herein was filed, February 12, 1980. Therefore, neither a hypothetical lien creditor nor a bona fide purchaser could have obtained, on the day the petition was filed, a superior lien to that of Lewers & Cooke. As a result, the Judgment lien of Lewers & Cooke passes the scrutiny of 11 U.S.C. § 544.

15. The Judgment having been filed on December 5, 1979, and the petition for relief having been filed herein on February 12, 1980, the next issue is one of preference.

16. 11 U.S.C. § 547(b) provides as follows:

(b) Except as provided in subsection (c) of this section, the trustee may avoid any transfer of property of the debtor—

(1) to or for the benefit of a creditor;

(2) for or on account of an antecedent debt owed by the debtor before such transfer was made;

(3) made while the debtor was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition; or

(B) between 90 days and one year before the date of the filing of the petition, if such creditor, at the time of such transfer—

(i) was an insider; and

(ii) had reasonable cause to believe the debtor was insolvent at the time of such transfer; and

(5) that enables such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title;

(B) the transfer had not been made; and

(C) such creditor received payment of such debt to the extent provided by the provisions of this title.

17. Lewers & Cooke argues that the Debtors had assigned to it all of their interest in the Agreement of Sale on July 24, 1979. Lewers & Cooke states that when the Judgment was recorded on December 5, 1979, it did not receive any right in addition to that which it had already received on July 24, 1979. Thus, Lewers & Cooke contends that the Judgment lien filed on December 5, 1979 did not constitute a preferential transfer since there was nothing transferred to it on date.

18. In determining when a transfer is made for purposes of preference, Section 547(b), 4 *Collier on Bankruptcy*, ¶ 547.44 at 547–132, 133 (15th ed. 1981), states that:

For the purposes of § 547(b), however, a transfer is not necessarily deemed to have been made at a time when the debtor and his transferee do what may effect a completed and irrevocable transfer between themselves. Section 547(e) provides that *it will be regarded as made only when perfected as against other parties—... in the case of real property, as against*

*subsequent bona fide purchasers against whom the transfer can be perfected.* (emphasis added).

19. Hawaii Revised Statutes § 501–82 (1976) provides as follows:

Tenure of holder of certificate of title. Every applicant receiving a certificate of title in pursuance of a decree of registration, and every subsequent purchaser of registered land who takes a certificate of title for value and in good faith, hold [sic] the same free from all encumbrances except those noted on the certificate in the order of priority of recordation, and any of the following encumbrances which may be subsisting, namely: . . . .

20. In *Honolulu Memorial Park, Inc. v. City and County of Honolulu*, 50 Haw. 189, 436 P.2d 207 (1967) the Court held that one who takes a certificate of title to registered land for value and in good faith holds the land free from all encumbrances except those noted on the certificate. This case stands for the proposition that unless a conveyance is noted on a certificate of title, such conveyance is not perfected against a bona fide purchaser. *See also Packaging Products Co. v. Teruya Bros., Ltd.*, 58 Haw. 580, 574 P.2d 524 (1978).

21. The Assignment to Lewers & Cooke was not perfected until December 5, 1979, thus, under § 547(e)(1), the transfer was made on said date.

22. Since the Assignment was not perfected until December 5, 1979, the Court finds that the transfer was made on said date, within 90 days of the filing of the petition. The Court thus finds that the Assignment and Judgment were a preferential transfer in favor of Lewers & Cooke and may be set aside by the Trustee.

23. The total sales price was $95,261.14 under the Sub-Agreement of Sale. Of the $22,000 cash down payment, the sum of $16,343.08 remains for the estate after deduction of certain costs of sale. A balance of $73,000.00 is to be financed by the Sub-Agreement of Sale between the Debtors and the Sub-Vendee. There being the sum of $39,000.00 due to the Vendors under the Agreement of Sale, the Debtors' estate will receive the balance of $34,000.00 under the Sub-Agreement of Sale. By adding the down payment of $16,343.08 to the sum of $34,000.00 due the estate under the Sub-Agreement of Sale, there is a total of $50,343.08 in the estate.

24. The following sums are to be paid out from the proceeds in the estate:

| | | |
|---|---|---:|
| 1. | FHB (approximate) | $ 15,209.35 |
| | a. Principal Amount Due | 8,553.34 |
| | b. Unpaid Interest as of 9/1/81 | 1,872.01 |
| | c. Attorneys' Fees | 4,784.00 |
| 2. | IRS | 9,760.44 |
| 3. | Claimed Exemption | 30,000.00 |
| | | $ 54,969.79 |

Therefore, there is no equity for the estate in the proceeds from the Sub-Agreement of Sale.

IT IS ORDERED that the Application for Abandonment of Property is hereby granted.