CODER v. ARTS. In re CODER. In re ARTS. ARTS v. CODER.

(Circuit Court of Appeals, Eighth Circuit. April 3, 1907.)

Nos. 2,451, 65, 74, 2,452.

1. APPEAL—REVIEW—QUESTIONS OF FACT—BANKRUPTCY PROCEEDINGS.

Where one engaged principally in farming made a mortgage upon a large part of his lands for $98,503.32 to secure a pre-existing debt within four months before he filed a voluntary petition in bankruptcy and the court below sustained it, *held* (1) where the court has considered conflicting evidence and made a finding or decree, it is presumptively correct, and, unless some obvious error of law has intervened, or some serious mistake of fact has been made, the finding or decree must be permitted to stand; (2) no such error or mistake was disclosed by the record, and the finding of the court below, that the mortgagee did not have reasonable cause to believe that it was intended to give a preference by the mortgage, and that the mortgagor did not intend thereby to hinder, delay, or defraud any of his other creditors, must be affirmed.

2. BANKRUPTCY—ADMINISTRATION OF ESTATE—PREFERENCES—EFFECT.

A transfer by an insolvent, within four months prior to the filing of a petition, for the purpose of securing or paying a pre-existing debt, without any intent or purpose to affect other creditors injuriously beyond the necessary effect of the security, is lawful, if not violative of other provisions of law, and it does not evidence any intent to hinder, delay, or defraud creditors within the meaning of Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449].

3. SAME—MORTGAGES.

The transfer specified in Bankr. Act July 1, 1898, c. 541, § 60a, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445], includes a mortgage or a lien voluntarily created by the debtor. If such a mortgage or lien creates a preference under section 60a, it is nevertheless not voidable under section 60b unless the creditor who receives it or is benefited thereby, had reasonable cause to believe that it was intended to give a preference by it.

**4. SAME.**

    A transfer or mortgage made by a person adjudged a bankrupt, to secure a pre-existing debt, within four months of the filing of the petition, is not void, under Bankr. Act July 1, 1898, c. 541, § 67e, 30 Stat. 564 [U. S. Comp. St. 1901, p. 3449], unless it was either made with the intent on his part to hinder, delay, or defraud his creditors, or some of them, or is held void as against his creditors by the laws of the state, territory, or district in which the property is situated.

**5. SAME—PROCEEDS OF MORTGAGED PROPERTY.**

    Where a trustee sells mortgaged property of the bankrupt free of the mortgage, and the proceeds thereof are sufficient for that purpose, the mortgagee is entitled to the payment of the interest upon his mortgage debt as well as the principal, out of the proceeds in accordance with the terms of the note and mortgage.

(Syllabus by the Court.)

Appeal from the District Court of the United States for the Southern District of Iowa.

On Petition for Review.

For opinion below, see 145 Fed. 202.

M. L. Learned (John L. Kennedy and George W. Paine, on the brief), for Coder.

John N. Baldwin (J. P. Conner, P. E. C. Lally, and George S. Wright, on the brief), for Arts.

Before SANBORN, HOOK, and ADAMS, Circuit Judges.

SANBORN, Circuit Judge. The court below sustained a mortgage to William Arts to secure a pre-existing debt of $98,503.32, which Alexander Armstrong, the mortgagor, owed him. This mortgage was dated May 2, 1904, recorded May 3, 1904, described 2,360 acres of land in Carroll county, Iowa, owned by Armstrong, who subsequently, and on July 27, 1904, filed his voluntary petition in bankruptcy, which was afterwards granted. The trustee assails the conclusion of the court below that this mortgage is valid by an appeal, and also by a petition to revise upon the grounds (1) that Arts had reasonable cause to believe that by this mortgage it was intended to give him a preference (section 60b, 30 Stat. c. 541, pp. 562, 560 [U. S. Comp. St. 1901, p. 3445], 32 Stat. c. 487, § 13, p. 799 [U. S. Comp. St. Supp. 1905, p. 689]); (2) that Armstrong gave the mortgage with the intent on his part to hinder, delay, and defraud his creditors (section 67e); and (3) that it was made within four months prior to the filing of the petition, and is void, although the mortgagee had no reasonable cause to believe that it was intended to give a preference by it, and the mortgagor did not make it with the intent to hinder, delay, or defraud other creditors. As the consideration of some of these contentions involves the investigation of the facts and circumstances under which the mortgage was given, the case will be considered upon the appeal and the petition to revise will be dismissed.

1. There was much conflict in the evidence, but these facts were established: Armstrong was engaged principally in farming; Arts in banking. The latter had been sole owner of a state bank in Carroll in the state of Iowa for six years, and his son, W. A. Arts, had been his cashier. As early as 1900 Arts had loaned $28,000 to Arm-

strong, and from that time until the mortgage was made he continued to loan him money in amounts varying from $20,000 to a few thousand dollars at a time, and to renew old loans until, on May 2, 1904, Armstrong owed him upon his promissory notes $98,503.32, and was overdrawn about $2,000 in his bank. The debtor had the reputation of being one of the wealthiest men in Carroll county. He held the title to 2,440 acres of land in that county, to 616½ acres in Monona county, to a residence in the town of Glidden, for which he paid about $12,000, to 200 or 300 cattle, some 30 horses, a large number of hogs, and some farm machinery. There were mortgages upon some of these lands, but they amounted to but a small proportion of the value of the real estate. In July, 1903, Armstrong had made a statement to Arts in which he estimated the value of his property at $220,000 and mentioned one mortgage for $5,900. The capital of Arts' bank was $50,000 and he had loaned to Armstrong this $98,503.32 without any security. In March and April, 1904, Arts became very seriously ill, and F. H. Arts, one of his sons, who was in business in Nebraska, was called home to attend him in his illness. While he was at Carroll, he and W. A. Arts, the cashier, examined the loans made by their father, and he suggested that as the loan to Armstrong was very large, and the facts regarding it might soon be discovered, the interests of the bank demanded that this loan should be secured. One of the sons then telephoned to Armstrong who lived several miles distant, and asked him to come to the bank. He came the next morning, and they expressed their wish to him and the reason for it. He returned to his home, sent them his tax receipts, they caused the mortgage to be drawn, and four or five days later, on May 2, 1904, he and his wife came in and executed it. On the next day Arts recorded it. At the time it was recorded Arts requested the recorder not to enter the mortgage upon a book which he kept for the convenience of newsmongers, but which was not one of the legal records of the county, and the recorder complied with his request. At the time this mortgage was made Armstrong was overdrawn in the bank about $2,000, and no security was taken for this overdraft, nor was it paid. Armstrong continued to draw checks upon the bank, and, during the month of May and a part of June, Arts paid out for him without farther security $3,000 more. Arts and his sons testified that they did not know that Armstrong was insolvent, and that they had no cause to believe that there was any intention to give Arts a preference by the execution of the mortgage. The truth was that Armstrong was insolvent. He owed about $295,000, and his property was worth about $182,000. He testified that he knew he was insolvent when he gave the mortgage. He did not inform Arts or his sons of this fact, and he made a statement in December, 1903, that he owed $36,000, and that the value of his property was $210,750, and another on June 13, 1904, more than a month after the mortgage was recorded, in which he disclosed property worth, at his estimate, $59,340 more than his debts. The mortgage to Arts covered 2,360 acres of land in Carroll county; but Armstrong held the title to 616½ acres of land in Monona county which he estimated worth $40,040, subject to a mortgage of $20,000, 80 acres near Glidden, which he estimated worth $6,400, and

152 F.—60

personal property, which he estimated worth $28,600, which were not included in this mortgage, and which, according to these estimates made in June, 1904, were worth more than $45,000 above the incumbrances he then reported upon them. Armstrong and his wife testified, and Arts and his sons denied, that the sons agreed with Armstrong and his wife that the mortgage should be kept from the record for six months, and that when they told Arts of this contract he replied: "I guess not, too much inquiry. It will go on record." The mortgage was recorded the day after it was made. One Sterling testified, and W. A. Arts denied, that in March or April, 1904, the latter told Sterling that Henry Armstrong was no good, and the old man was no better. One Hess testified that in 1900 Armstrong owed and paid his bank $28,000, and that he then learned that he was in debt to the amount of $75,000. One Carter testified, and Arts denied, that the former, in February, 1904, tried to sell to the latter two promissory notes signed by Armstrong, and that Arts declined to buy them, and said that he was carrying the Armstrongs for all that he cared to, and that they would have to pay up before he would let them have any more money.

In this state of the evidence the court below was of the opinion that Arts did not have reasonable cause to believe that there was any intention to give him a preference by the making of this mortgage. When the court has considered conflicting evidence and made a finding or decree it is presumptively correct and unless some obvious error of law has intervened or some serious mistake of fact has been made, the finding or decree must be permitted to stand. Warren v. Burt, 7 C. C. A. 105, 110, 58 Fed. 101, 106; Paxson v. Brown, 10 C. C. A. 135, 144, 61 Fed. 874, 879; Stuart v. Hayden, 18 C. C. A. 618, 622, 72 Fed. 402, 406; Fitchett v. Blows, 20 C. C. A. 286, 290, 74 Fed. 47, 51; Tilghman v. Proctor, 125 U. S. 136, 8 Sup. Ct. 894, 31 L. Ed. 664; Kimberly v. Arms, 129 U. S. 512, 9 Sup. Ct. 355, 32 L. Ed. 764; Furrer v. Ferris, 145 U. S. 132, 134, 12 Sup. Ct. 821, 36 L. Ed. 649.

Armstrong was engaged principally in farming, and he was not subject to adjudication in bankruptcy upon an involuntary petition. The preference voidable under the bankruptcy law, therefore, could not arise, unless he voluntarily invited an adjudication in bankruptcy against himself. In the absence of such an adjudication a bona fide mortgage whereby a creditor obtains a larger percentage of his preexisting debt than other creditors of the same class is valid. Armstrong was reputed to be one of 'the wealthiest citizens of Carroll county. He made a financial statement to Arts less than a year before this mortgage was made, which disclosed property owned by him which was worth at least $100,000 above the debt to Arts, and the other debts he then mentioned. Arts had been loaning money to him without security for many years. All the testimony, which tended to show any reasonable cause for Arts to believe that there was any intention to give him a preference by the execution of this mortgage, was denied under oath. The mortgage was not taken hastily. It did not include all the debtor's property, but left personal and real estate worth many tens of thousands of dollars uncovered by it, and Arts still ex-

tended credit to Armstrong for the $2,000 overdraft, and within the next 50 days after the mortgage was made paid out for him $3,000 more without taking any security until after it had been expended. These facts support the finding below. To our minds the record discloses no mistake in the consideration of the evidence, and no error in the application of the law in the investigation of this question by the court below. Our conclusion is that Arts did not have reasonable cause to believe that there was any intention to give him a preference over other creditors by the execution of the mortgage of May 2, 1904.

2. Upon the record which has been recited the court also found that Armstrong did not make this mortgage with the intent or purpose on his part to hinder, delay, or defraud his creditors, or any of them, and no error of law or mistake of fact has been discovered in its consideration of the evidence relative to this question which would warrant a disturbance of this conclusion. The contention that the intent to hinder, delay, and defraud other creditors must be inferred from the fact that the inevitable effect of the mortgage was to deprive them of the opportunity to collect their claims in full, and from the rule of law that every one is presumed to intend the natural and probable effect of his acts, is not tenable here. It is every intent to hinder, delay, or defraud creditors unlawfully only, not every intent to hinder or delay them, that avails to avoid a transfer made for a pre-existing debt under section 67e. An insolvent debtor until the commencement of proceedings in bankruptcy still has the jus disponendi of his property. He has the right to secure and pay his debts with it, and he has the right to secure and pay one creditor in preference to others, provided always the security or the payment is not violative of any of the acts of Congress or of any of the statutes of the state. A preference of one creditor over others by such a payment or by such security, which is free from actual and intended fraud, and from any purpose to affect other creditors injuriously, beyond the necessary effect of the security or the payment, is valid and lawful, and it cannot evidence such an intent to hinder, delay and defraud as will make it void or voidable under section 67e. "Every mortgage necessarily tends to hinder or delay creditors other than the mortgagee, but a delay necessarily resulting from a fair and honest exercise of the right to dominion over one's property, and to pledge or otherwise dispose of it, is neither an unjust nor lawful interference with the rights of others and is not within the terms of the statute making void conveyances intended to hinder or delay creditors." Sabin v. Columbia River Lumber & Fuel Co., 34 Pac. 692, 695, 25 Or. 15, 42 Am. St. Rep. 756; Lampson v. Arnold, 19 Iowa, 479, 484, 485; Stewart v. Dunham, 115 U. S. 61, 66, 5 Sup. Ct. 1163, 29 L. Ed. 329. A transfer made in good faith to pay or to secure an honest antecedent debt by an insolvent within four months of the filing of a petition in bankruptcy by or against him constitutes no evidence of an intent on his part to hinder, delay, or defraud other creditors, within the meaning of section 67e of the bankruptcy law, notwithstanding the fact that its necessary effect is to hinder and delay them, and to deprive them of the opportunity they might otherwise have had to collect their claims in full.

There is no other substantial evidence in this case of any purpose

on the part of Armstrong to hinder, delay, or defraud any of his creditors. He honestly owed the entire debt he secured. He owed a banker, who for years had loaned him money whenever he desired .it, without security. A part of his debt was due, and a portion had not. yet matured. His creditor was ill, and his sons feared for his life. He owed him more than the entire capital of his bank, and the cashier feared that if this fact were known it might cause a run upon the institution.· He was requested to protect and secure an obligation he could not immediately pay. He did so with no apparent pur-' pose or intention except to honestly secure the payment of that which he undoubtedly would have paid as he had promised if the money to do so had been at his disposal. His act was free from fraud or unlawful intent, and the finding of the court upon this question must be affirmed.

3. Was the mortgage voidable by the trustee although the mortgagee did not have reasonable cause to believe that there was an intention to give a preference thereby under section 60b and although the mortgagor had no intent or purpose on his part to hinder, delay or defraud his creditors, or· any of them, under section 67e, because the mortgage was given to secure a pre-existing debt within four months of the filing of a petition in bankruptcy? Counsel· for the trustee argue that an affirmative answer should be given to this question be- ·cause sections 60a and 60b have no application to liens voluntarily created, and section 67e avoids mortgages for a pre-existing debt although the mortgagor had no intent to hinder, delay, or defraud his creditors. The portions of these sections pertinent to their argument are :

"Sec. 60. Preferred Creditors.—a. A person shall be deemed to have given a preference if, being insolvent, he has procured, or suffered a judgment to be entered against himself in favor of any person, or made a transfer of any of his property, and the effect of the enforcement of such judgment or transfer will be to enable any one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class.

"b. If a bankrupt shall have given a preference within four months before the filing of a petition, or after the filing of the petition and before the adjudication, and the person receiving it or to be benefited thereby, or his agent acting therein, shall have had reasonable cause to believe that it was intended thereby to give a preference, it shall be voidable by the trustee and he may recover the property or its value from such person."

"Sec. 67. Liens.—d. Liens given or accepted in good faith and not in contemplation of, or in fraud upon this act and for a present consideration, which have been recorded according to law, if record thereof was necessary in order to impart notice, shall not be affected by this act.

"e. That all conveyances, transfers, assignments or incumbrances of his property, or any part thereof, made or given by a person adjudged a bankrupt under the provisions of this act subsequent to the passage of this act, and within four months of the filing of the petition, with the intent and purpose on his part to hinder, delay or defraud his creditors, or any of them, shall be null and void as against the creditors of such debtor."

The following, and many other authorities cited by counsel to sustain their contention, have been examined by the court: City National Bank v. Bruce, 109 Fed. 69, 48 C. C. A. 236; In re Sanderlin (D. C.) 109 Fed. 857; In re Jones (D. C.) 118 Fed. 673; In re Belding (D. C.) 116 Fed. 1016; In re Wolf (D. C.) 98 Fed. 84; In re

Pease (D. C.) 129 Fed. 447, 448; In re Gutwillig, 92 Fed. 337, 34 C. C. A. 377; Keppel v. Tiffin Savings Bank, 197 U. S. 356, 25 Sup. Ct. 443, 49 L. Ed. 790; Pollock v. Jones, 124 Fed. 163, 61 C. C. A. 557. But the word "transfer" in section 60a both by the express terms of the bankruptcy law and by authoritative decision includes "the sale and every other and different mode of disposing of, or parting with property, or the possession of property, absolutely or conditionally, as a payment, pledge, mortgage, gift or security." Section 1, par. 25; Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 444, 21 Sup. Ct. 906, 45 L. Ed. 1171; In re Ed. W. Wright Lumber Co. (D. C.) 114 Fed. 1011, 1013. A mortgage is a security and a transfer, and subject to the provisions of section 60a and section 60b. Such a mortgage or transfer as constitutes a preference under section 60a is not voidable under section 60b by the plain words of that section, and by its adjudicated construction unless the creditor who receives it, or is benefited by it, or his agent, has reasonable cause to believe that it was intended thereby to give a preference. Pirie v. Chicago Title & Trust Co., 182 U. S. 438, 446, 21 Sup. Ct. 906, 45 L. Ed. 1171; McNair v. McIntyre, 113 Fed. 113, 114, 51 C. C. A. 89, 90; Hussey v. Richardson-Roberts Dry Goods Co. (C. C. A.) 148 Fed. 598, 599; Pittsburgh Plate Glass Co. v. Edwards (C. C. A.) 148 Fed. 377.

And finally, mortgages or transfers, to secure pre-existing debts made within four months of the filing of a petition in bankruptcy, are legal and valid, unless voidable by reason of some provision of the bankruptcy law, or of some state law, notwithstanding the fact that they create preferences. They are valid unless avoided; not void unless validated. The provision of section 67d, that liens for present considerations given and accepted in good faith shall not be affected by the bankruptcy law, does not strike down or render voidable those given and accepted for past considerations, and section 67e, which declares that all transfers made or given by a person adjudged a bankrupt within four months before the filing of the petition "with the intent and purpose on his part to hinder, delay, or defraud his creditors, or any of them, shall be null and void," is necessarily limited by the force of its terms to those transfers which are given with that intent only, and it leaves those given and accepted without such an intent unaffected by it and valid. A transfer or mortgage made by a person adjudged a bankrupt to secure a pre-existing debt within four months of the filing of the petition is not voidable under section 67e, unless it was either made with the intent on his part to hinder, delay or defraud his creditors, or some of them, or is held void as against his creditors by the laws of the state, territory, or district in which the property is situated. The result is that the mortgage to Arts was properly sustained by the court below.

The lands described in this mortgage were sold by the trustee free of incumbrances for $135,000, and the collection of the proceeds was completed on March 1, 1906. Out of these proceeds the court below allowed to the mortgagee the principal of his debt and interest thereon until August 26, 1904, the date on which he filed his claim. He has appealed from the decree, and has also filed a petition to re-

vise it because interest was not allowed to him until March 1, 1906, the date when the proceeds of the sale had been collected. As no issue of fact is presented, and the only question here is one of law, it will be considered upon the petition to revise, and the appeal will be dismissed. By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge. Another rule might prevail if the proceeds of the mortgaged property were insufficient to pay the mortgage debt and its interest in full and the mortgagee was seeking to collect an unpaid balance by sharing with other creditors in the distribution of the common property. He might not be entitled, then, to recover from the proceeds of the common property interest upon his debt to any later date than the unsecured creditors would recover interest upon their claims. But the proceeds of these mortgaged lands appear to be ample to pay the principal and interest of the debt to the mortgagee Arts, and where a trustee sells mortgaged property of the bankrupt's estate free of the mortgage, and the proceeds of the sale are sufficient for that purpose, the mortgagee is entitled to payment of the interest upon his mortgage debt as well as the principal, out of the proceeds in accordance with the terms of the note and mortgage. Thompson v. Fairbanks, 196 U. S. 516, 526, 25 Sup. Ct. 306, 49 L. Ed. 577; York Mfg. Co. v. Cassell, 201 U. S. 344, 352, 26 Sup. Ct. 481, 50 L. Ed. 782; In re Devore, Fed. Cas. No. 3847; In re J. H. Alison Lumber Co. (D. C.) 137 Fed. 643, 649.

The decree below must be revised and modified, so that the portion which directs the payment of $97,497.40 to Arts out of the proceeds of the sale of the property mortgaged to him will read:

"It is further ordered, adjudged, and decreed that said claims of William Arts on account of said four notes, including the principal and the interest thereon to March 1, 1906, aggregate $109,107.56, and that this amount be paid in full to said William Arts, the claimant, by the trustee, out of the funds and moneys in his hands which he received on account of the sale of the lands covered by the mortgage to Arts hereinbefore described, after payment of all prior liens and claims thereon as determined by the District Court."

Arts may recover his costs in this court against the trustee upon the latter's appeal, and upon the petition of Arts to revise in matter of law. The appeal of Arts, and the petition of the trustee to revise in matter of law, must be dismissed, and the case must be remanded to the court below, with instructions to modify the decree as indicated in this opinion; and it is so ordered.