## MATTHEWS v. JOANNES BROS. CO.

1. INSOLVENCY— BANKRUPTCY— PREFERENCES— FRAUDULENT PAYMENTS.

    Money paid by an insolvent firm to creditors who have reason to believe that it is insolvent and the payment would operate as a preference, is recoverable in assumpsit by the trustee in bankruptcy, under chapter 487, 32 U. S. Stat. § 13, passed February 5, 1903, amending the Bankruptcy Act.

2. BANKRUPTCY—PREFERENCE—NOTICE.

    Knowledge that the assets of a firm exceeded the debts by only a small margin, as estimated by the members of the firm, and that it was unable to raise the amount due the creditor without mortgaging the assets, constitute sufficient notice that the payment will operate as a preference.

3. TRIAL—HARMLESS ERROR—INSTRUCTIONS.

    In such case it is harmless error to charge the jury that plaintiff could recover if the defendant knew such facts as would have put a reasonably prudent man upon inquiry as to the insolvency of the debtor.

Error to Delta; Stone, J.   Submitted January 7, 1909.
( Docket No. 13.)   Decided May 26, 1909.

Assumpsit by Stanley M. Matthews, trustee in bankruptcy, against Joannes Brothers Company for money received in fraud of the bankruptcy law.   There was judgment for plaintiff, and defendant brings error.   Affirmed.

*A. H. Ryall* (*P. H. Martin*, of counsel), for appellant.

*F. D. Mead*, for appellee.

HOOKER, J.   On August 18, 1905, the defendant, being then a creditor of a firm called Martin & Marks, received from them in full of their indebtedness to it the sum of $1,814.50.   On the 19th of September following a petition in bankruptcy was filed against Martin & Marks in the Federal court.   This was contested, and upon May 2, 1906, it was adjudicated that they were bankrupts as alleged in the petition, and Stanley M. Matthews was appointed trustee in bankruptcy, and as such he has brought this action to recover said sum as paid in fraud of the bankruptcy law.   Upon a trial, a verdict and judgment were rendered for the plaintiff, and the defendant has appealed.

The question made most prominent in appellant's brief arises upon the charge of the court relating to the bona fides of the defendant in receiving the payment sued for. The brief states the point thus:

"The court told the jury, in effect, that (*a*) actual knowledge of the debtors' insolvency, or (*b*) reasonable grounds to believe the debtor insolvent, the equivalent of actual knowledge, is sufficient to avoid the payment. Thus far we find no fault with the charge.   But the court went a step farther, and charged that: 'Knowledge of such facts as would have put a reasonably prudent man upon inquiry would invalidate the payment.'"

It is criticised as follows:

"We deny that the doctrine of reasonable prudence,

stimulating inquiry, that may lead either to actual knowledge, or knowledge of the existence of facts and conditions that would produce a reasonable belief in the insolvency of the debtor, has any place in the bankruptcy legislation. We deny that any man, whether a prudent man or not, is bound to assume any burden of inquiry whatsoever concerning his debtor's solvency before accepting payment of his debt. The inhibition found in the bankruptcy law against payment of one's debt is a limitation upon a legal and natural right. It should not be extended beyond the letter of the law; and nowhere in the bankruptcy law can the duty of making inquiry be found. It simply avoids a payment made by the insolvent when the creditor knows, or then has reasonable grounds to believe, the debtor insolvent. What meaning can the term 'reasonably prudent man' have in this connection? What 'inquiry' and how extensive shall it be? By what standard shall these questions be determined? 'Reasonably prudent man' is a meaningless phrase unless used in reference to specific duty. The duty here contemplated is inquiry. But where is the authority for imposing any such burden or duty? It cannot be gratuitously cast upon the creditor, and it is not found in the terms of the statute."

The following facts were undisputed: Joannes Bros. Company sold goods regularly to Martin & Marks until late in July or early in August, 1905, through Walter Hews, who was their traveling salesman and authorized collector. He visited Martin & Marks regularly every week or two during the period of their dealing. He was interested in the collection of this account, being liable under his contract with defendant for one-half of the loss, if not collected. On August 10th Hews received a check for $800, which was the amount then due on this account, leaving $1,014.50 to fall due later. The check was dated August 13th. It was not paid when presented, and was protested prior to August 18th, for nonpayment. On August 18th defendant's president, who had charge of its collections, met Hews at Escanaba by arrangement; one of the objects being to see Martin & Marks. They met Martin, and went with him to see Ryall, an attorney, at

Martin's suggestion. Martin made an excuse for his failure to provide for the check. Defendant's president suggested that Martin borrow the money to pay its bill, and that his brother P. J. Martin might aid him to secure it. Martin objected to asking him. They saw him, however, and did ask him, and he refused to do so. They then went to the bank, where the banker refused to loan money on a chattel mortgage on Martin & Marks' stock, etc. Previous to the visit to P. J. Martin, Joannes, defendant's president, asked Martin for a statement of the assets and liabilities of the firm, and Martin stated that the stock at cost would inventory $1,500, their fixtures, horse, and wagon, $1,000 at a low estimate, and their book accounts at $1,200, besides some real estate which was incumbered, and some book accounts which he considered doubtful, aggregating about $300, and that their debts aggregated $2,500 or $2,600. It is obvious, therefore, that at the best there was a margin of only $1,000 above debts, and that, only upon the theory that upon sale the goods should net cost, the horse and wagon sell for the estimated value, and the accounts be collected without cost or shrinkage. See *Coder* v. *Arts*, 152 Fed. 943, 82 C. C. A. 91 (15 L. R. A. [N. S.] 372). Finally, an arrangement was made, by which Ryall, an attorney (now defendant's attorney in this and other litigation), took a chattel mortgage upon the entire stock and fixtures, horse, wagon, etc., of Martin & Marks, and an assignment of all accounts to secure six notes given by them to said Ryall, aggregating $1,814.50, the exact amount of plaintiff's claim due and to become due. Ryall thereupon obtained that sum from the local bank upon his own paper, secured by a deposit of the mortgage and the accompanying notes as collateral. These were due as follows: $200, August 23d; $200, September 7th; $500, September 14th; $200, September 20th; $500, October 14, 1905; the remaining October 20, 1905. The usual provision for seizure in case the mortgagee should feel insecure was inserted. The money thus secured was then and there paid over to the defendant's

president. We have no hesitation in saying that this showing was ample to have justified the instruction to the jury that at the time of payment the defendant's president and agent had reason to believe, if they did not know, that the firm of Martin & Marks was insolvent, and that the payment would inevitably result in a preference over other creditors. It is therefore unnecessary to discuss the point raised upon the instruction referred to. See *Coder* v. *Arts*, supra.

Defendant's counsel contended that the question of insolvency was open, but, as they state in their brief, that "now it turns out that the indebtedness of Martin & Marks was considerably in excess of the amount stated, sufficiently so to render them insolvent," we treat that fact as proved. They also seem to concede that the adjudication in bankruptcy settled that fact.

Insolvency being conceded, and reason to believe that it existed, together with the fact of preference being conclusively proved, there is no occasion to discuss other questions, with the exception of that arising upon the overruling of defendant's demurrer. The declaration contained two counts, and a plea was filed to the first and a demurrer to the second. The question seems to hinge on the sufficiency of the count to support the claim that the adjudication in bankruptcy was conclusive upon the question of preference in this case, this transaction being the express ground upon which Martin & Marks were adjudicated bankrupts. The declaration was ample to support the finding of a preference upon proof outside of the bankruptcy record, and it therefore becomes unimportant to inquire whether such record proof was admissible for that purpose under the second count, and the question raised by the demurrer need not be determined.

The judgment is affirmed.

BLAIR, C. J., and GRANT, MOORE, and McALVAY, JJ., concurred.