In the Matter of John W. SEQUIST, III, Bankrupt.

No. H 11472.

United States District Court, D. Connecticut.

Jan. 16, 1974.

Robert H. Nathan, of Gilman & Marks, Hartford, Conn., for petitioner.

Robert Lebovitz, of Lebovitz, Gussak & Litman, Hartford, Conn., for respondent.

## RULING ON PETITION FOR REVIEW

CLARIE, District Judge.

The present matter comes before the Court on a petition to review an order of the Referee in Bankruptcy. That order permitted the petitioner, Society for Savings, as first mortgagee on certain real property owned by the bankrupt, to recover attorney's fees and interest on the mortgage debt until the date that the bankrupt's property was sold. The petitioner submits that the Bankruptcy Court erred in allowing interest only to the date of the sale of the mortgaged property, and urges that interest should have been allowed until the date on which it actually received payment, approximately two months later. The sole issue before the Court is whether the owner of a first mortgage on property of the bankrupt is entitled to receive interest only until the date the property is sold by the trustee in bankruptcy, or until the date the mortgagee actually receives payment of its debt, when the proceeds realized from a sale of the bankrupt's assets are insufficient to pay off subsequent secured creditors. This Court, having reviewed the Memorandum and Order of the Bankruptcy Court, as well as the legal arguments in the memoranda of the petitioner and the second mortgagee, United Bank and Trust Company, finds that the Referee's Order should be modified, so

as to permit the petitioner to recover interest until June 28, 1973.

The Referee in Bankruptcy recognized the existence of conflicting legal authority for the alternative payment of interest to the date of the sale of the mortgaged premises, the date that the trustee consummates the transfer of the property which has been sold, and to the date that payment is actually made to the mortgagee. The Referee's memorandum noted, however, that a unifying principle underlying the cases was their reference "to the general equity power of the court." The Referee then concluded that "substantial equity will be reached if the rule set forth in 3A Collier on Bankruptcy, para. 63.16 is followed." That section provides:

"Mortgagees have almost uniformly been held entitled to interest beyond the filing date, *ordinarily up to the date of sale,* where the proceeds of the mortgaged property sold by the trustee were sufficient to pay principal and interest." (Emphasis added).

The Referee also relied on Coder v. Arts, 152 F. 943 (8th Cir. 1907), aff'd, 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1909), in support of its order limiting the payment of interest to the date of sale.

■ With respect to the unsecured claims of general creditors, it is generally held that interest is not allowed after the date of bankruptcy. Vanston Bondholders Protective Committee v. Green, 329 U.S. 156, 163–164, 67 S.Ct. 237, 91 L.Ed. 162, reh. denied, 329 U.S. 833, 67 S.Ct. 497, 91 L.Ed. 706 (1946); Sexton v. Dreyfus, 219 U.S. 339, 346, 31 S.

Ct. 256, 55 L.Ed. 244 (1911). This rule, which has been described "as a rule of liquidation practice rather than as a rule of substantive law," Bruning v. United States, 376 U.S. 358, 362–363 n. 4, 84 S. Ct. 906, 909, 11 L.Ed.2d 772 (1963), finds support in the language of Section 63 of the Bankruptcy Act, 11 U.S.C. § 103; [1] the equitable principle of equality among all creditors of the same class, MacLachlan, Bankruptcy § 147 at 140–142 (1956 ed.); and considerations of convenience, and practicality.[2]

■ The rule with respect to the claims of secured creditors is somewhat different, however.

"Secured creditors are not less affected by the cessation of interest after the filing than unsecured creditors, yet in some respects they enjoy through their security a privileged position. A secured creditor whose security was insufficient to cover both capital and interest may not increase his deficiency claim by applying the proceeds first against interest accrued after the filing date. To that extent his rights are similar to those of an unsecured creditor. But 'it has always been a fundamental principle of the bankruptcy law that . . . liens . . . , when valid in bankruptcy, shall not be impaired in the administration of a bankrupt estate.' Consequently, payment of interest accruing after the date of petition is permitted where the collateral is sufficient, for 'the collateral is security for the payment of interest as much as the payment of the principal.'" 3A Collier on Bankruptcy, ¶ 63.16 at 1861–1862 (14th ed. 1971).

1. 11 U.S.C. § 103 provides, in pertinent part: "a. Debts of the bankrupt may be proved and allowed against his estate which are founded upon (1) a fixed liability, as evidenced by a judgment or an instrument in writing, absolutely owing at the time of the filing of the petition by or against him, whether then payable or not, with any interest thereon which would have been recoverable at that date or with a rebate of interest upon such as were not

then payable and did not bear interest; . . . .."

2. "It is an administrative convenience not to figure interest to dates of payments, and, as long as there is not enough to pay the principal of claims, there is thought to be little point to doing so." MacLachlan, Bankruptcy § 147 at 141 (1956 ed.). *Also see,* 3A Collier on Bankruptcy ¶ 63.16 at 1858 (14th ed. 1971).

*See* generally, Oppenheimer v. Oldham, 178 F.2d 386 (5th Cir. 1949); and Annot. 27 A.L.R.2d 586, 592 (1953). Since, in the present case, a sale of the mortgaged property free and clear of liens produced a fund which exceeded the principal of the secured debt, the petitioner was clearly entitled to interest beyond the date of bankruptcy, and the Referee correctly so held.

Having eliminated the date of bankruptcy as the cut-off point for interest on the petitioner's claim, the Referee determined that substantial equity would be achieved by terminating the estate's obligation to pay interest as of April 24, 1973, the date on which the collateral property was sold by the trustee in bankruptcy, rather than as of June 28, 1973, the date upon which payment of the principal balance was actually made to the petitioner. In this Court's view of the facts, both substantial equity and the law require that the petitioner be allowed interest on its claim until June 28, 1973, for the trustee had not even received the proceeds of the sale of the mortgaged property, thereby acquiring the ability to pay off the petitioner's debt, until June 21, 1973, only a few days before.

The petitioner's argument and that of the second mortgagee, United Bank and Trust, although poles apart, suffer from the same defect. In arguing that the date of actual payment to a secured creditor should mark the cessation of the estate's obligation to pay interest, the petitioner assumes that the trustee's *realization* of funds from the sale of the mortgaged property and the payment of the estate's secured debts will occur simultaneously. Conversely, the argument of the second mortgagee, which naturally desires that the estate's obligation to pay interest to the petitioner terminate as early after bankruptcy as possible, assumes that the date of sale should mark the cessation of the estate's obligation, irrespective of whether the estate actually has the ability to pay its secured debts at that time. However, without first considering the date upon which the trustee actually *realizes* the proceeds from the sale of mortgaged property, and thereby acquires the ability to pay the debt owing to a creditor such as the petitioner, a selection of either the date of sale or the date of actual payment to the creditor as the cut-off date for the payment of interest runs the risk of unjustifiably penalizing either the secured creditor or the estate.

To permit a first mortgagee such as the petitioner automatically to receive interest until the date of actual payment of its debt would enable it to collect interest at the estate's expense long after the trustee has acquired the ability to pay off the mortgage debt. By neglecting to demand and obtain payment, a first mortgagee could idly sit by while interest runs on his claim, thereby simultaneously decreasing the amount which subordinate creditors, both secured and unsecured, will ultimately receive. Conversely, an automatic selection of the date of sale as the point for terminating the estate's obligation to pay interest would prematurely cut off the first mortgagee's right to receive interest prior to the estate's actually having acquired the ability to pay off the mortgage debt, for frequently there is a hiatus between the date of sale when the initial deposit may be made and the date on which the proceeds of such a sale are actually realized.

Coder v. Arts, *supra,* mandates neither of these alternatives. In *Coder,* the petitioner merely sought, and ultimately obtained from the Court, interest "until . . . the date when the proceeds of the sale had been *collected.*" 152 F. at 950. The Court's holding allowing interest to that date is completely consistent with that reached in In re Stevens, 173 F. 842 (D.Or.1909), where the Court inquired

"[W]hen does interest cease to run upon a secured claim? The manifest answer to this is, when the money is realized from the property pledged. That is the end of the proceeding, we might say, for foreclosing the lien and the duty then devolves upon the trus-

tee to pay the claimant his debt. The estate ought not to be burdened with the payment of interest subsequent to that time. Sturgis was, therefore, entitled to interest on his demand to the time the realty covered by his mortgage was sold and the money realized therefor with which to pay such demand." 173 F. at 844.

It is also in accord with United States v. Sampsell, 153 F.2d 731 (9th Cir. 1946), which, although seeming erroneously to assume that the date of sale and the date of realization of the proceeds of the sale in In re Stevens, *supra,* were the same, stands for the proposition that the policy behind § 67 of the Bankruptcy Act of 1898 required the payment of interest on a secured debt after the date of bankruptcy where the security was sufficient to pay the debt and the interest. 153 F.2d at 736. *See also,* In re Torchia, 185 F. 576, 584 (W.D.Pa.1911); In re Moody, 59 F.Supp. 828 (W.D.Pa. 1946).

In the present case, the mortgaged property was sold on April 24, 1973, free of all encumbrances, by order of the Bankruptcy Court. The trustee's accounts disclose that $5000, or approximately 25% of the purchase price, was paid to the trustee on April 25, 1973. The trustee's accounts further indicate that the balance of $15,990.75 was paid to the trustee on June 21, 1973. A week later, on June 28, 1973, payment of the principal balance on the first mortgage was made to the petitioner. The Referee's order of August 22, 1973, allowing interest only to the date of sale, April 24, 1973, articulates no reasons in support of its conclusion that substantial equity required the payment of interest only to that date. Were it not for the fact that the trustee received the entire proceeds of the sale only a matter of days before payment of the principal was actually made to the petitioner, it might possibly be assumed that the petitioner failed diligently to pursue its claim against the estate, and that the Referee's order was, therefore, designed to allow interest only to the earliest date

at which the petitioner *could have* received payment had he acted promptly. As the record stands, however, there is nothing to indicate that the petitioner lacked diligence, or good faith, or that it could have been paid the amount it was due prior to June 21, 1973. It clearly cannot be assumed that the one week delay between June 21, 1973 and the date the petitioner was actually paid warranted a denial of interest after April 24, 1973.

Like the order under review, the memorandum of the second mortgagee, United Bank and Trust Company, concludes that it would be inequitable to allow the petitioner to recover interest beyond the date of sale of the mortgaged property. However, no reason offered in support of this conclusion withstands analysis. Surely the equity in the petitioner's claim cannot be defeated by invoking the incantation *"in custodia legis,"* for until such time as the proceeds of the sale were realized by the estate, nothing was in the law's custody that had not already been there since the date of bankruptcy. In re Stevens, *supra;* United States v. Sampsell, *supra.*

Similarly, the duration of the petitioner's right to interest should not be affected by the fact that a subordinate secured creditor, the second mortgagee, United Bank and Trust, would be prejudiced by the payment of interest to the first mortgagee. If it is sound to permit payment of interest after the date of bankruptcy, to the detriment general creditors whose proportionate share in the estate will be diminished by virtue of such payments, then it is also sound to permit payment in the present situation. Sehon-Stevenson & Co. v. Union Trust Co., 113 F.2d 968, 970–971 (4th Cir. 1940). A second mortgage should give the second mortgagee an advantage over subsequent mortgagees and unsecured creditors, not an advantage over the first mortgagee. To hold that the presence of a second mortgage somehow curtails a first mortgagee's right to interest would be to eliminate the distinction between the two. Here, the sec-

ond mortgagee struck its bargain with full notice of the petitioner's paramount lien, compensating for its added risk by charging the bankrupt a higher rate of interest. Equity does not require that the first mortgagee's right to interest be curtailed in order to apply the amount saved to the principal owing the second mortgagee. In the absence of an articulation of any factors which would warrant the Referee in Bankruptcy cutting short the petitioner's right to interest, equity requires that the first mortgagee and the second mortgagee each be given the benefit of their bargain with the bankrupt. The petitioner is entitled to interest until June 28, 1973. In all other respects, the Referee's findings and order are adopted and confirmed. So ordered.