**In the Matter of ELMWOOD FARM, INC., Debtor.**
**Bankruptcy No. 80 B 20346.**
**Adv. No. 81 6195.**

United States Bankruptcy Court,
S. D. New York.

April 7, 1982.

Sidney Turner, White Plains, N. Y., for trustee.

Helfand & Alter, New York City, and Savad & Gavioli, Nanuet, N. Y., for secured claimants; Maxwell Barrett, New York City, of counsel.

HOWARD SCHWARTZBERG, Bankruptcy Judge.

The issue to be resolved in this case is the extent, if any, to which secured claimants may recover interest and attorneys' fees with respect to their secured claims.

The debtor, Elmwood Farm, Inc., filed with this court a petition for relief under Chapter 11 of the Bankruptcy Code on August 6, 1980. However, the debtor was unable to effect a reorganization, with the result that it was converted to Chapter 7 for liquidation by order of this court on March 18, 1981. The trustee in bankruptcy, who was selected by the United States Trustee pursuant to 11 U.S.C. § 15701, thereafter defended an adversary proceeding commenced by the above-captioned plaintiffs for an order directing the trustee to pay certain amounts due them pursuant to perfected mortgages against the debtor's real and personal property, together with interest and attorneys' fees.

The debtor's estate was liquidated by the trustee through the sale of property free and clear of liens, with the liens to attach to the proceeds in accordance with the provisions under 11 U.S.C. § 363(f). The ex-

pense of this sale amounted to $27,150. Additionally, the trustee received the proceeds of fire insurance to which the estate was entitled as a result of a fire that destroyed the debtor's horse stables. The gross estate currently totals $672,778.54 to which should be added interim allowances previously disbursed in the amount of $42,206.23, for a total gross estate of $714,984.77.

The plaintiffs established at the trial that the principal amount of their original loan to the debtor was $270,000, of which $140,000 was owed to the Peoples National Bank of Rockland County, $75,000 was owed to the Northeast Small Business Investment Corporation and $55,000 was owed to Samuel Kripke. An additional $50,000 was thereafter advanced by Samuel Kripke, for a total principal indebtedness due to the plaintiffs in the amount of $320,000, which was subordinate to a first mortgage dated January 5, 1979, in the sum of $95,000, secured by approximately 45 unimproved acres.

The plaintiffs' mortgage notes provide that the debtor agreed to pay interest on the principal at the rate of 15 per cent per annum, together with attorneys' fees of 20 per cent of the unpaid balance, if the notes were placed with attorneys for collection.

The evidence at the trial also revealed that when the debtor filed its Chapter 11 petition on August 6, 1980, its indebtedness to the plaintiffs, inclusive of interest at the rate of 15 per cent per annum totalled $415,397.85, comprised as follows:

| Plaintiff | Debt |
| --- | --- |
| The Peoples National Bank of Rockland County | $189,712.15 |
| Northeast Small Business Investment Corporation | 92,597.70 |
| Samuel Kripke | 67,880.00 |
| Samuel and Emma Kripke | 65,208.00 |

It is noted that subsequent to the filing of the proof of claim by Peoples National Bank of Rockland County, the sum of $20,000 was paid to the trustee because this sum was applied by the bank to passbook collateral after the filing of the debtor's Chapter 11 petition. Therefore, the bank filed an amended proof of claim to reflect this refund. The parties have agreed in the proposed orders which they previously submitted that the trustee is entitled to deduct from any payments to be made to the Peoples National Bank of Rockland County the sum of $3,599.96, representing the interest on the $20,000 at 15 per cent per annum for the period from the date of the filing of the Chapter 11 petition to October 19, 1981, when the $20,000 was refunded to the trustee.

Since the gross estate of $714,984.77, inclusive of interim allowances, exceeds the amount of the first mortgage, originally at $95,000 (but now totalling approximately $120,000 with interest) and the amount of the plaintiffs' secured claims when the Chapter 11 petition was filed, aggregating $415,397.85, it follows that the plaintiffs may look to 11 U.S.C. § 506(b), which provides:

"§ 506. Determination of secured status.

· · · · ·

(b) To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose."

### INTEREST

Code § 506(b) is a codification of existing law that permits a creditor whose security is more than sufficient to receive payment in full to recover interest beyond the date of bankruptcy in accordance with the terms of the security agreement. The rule was stated as follows in *Coder v. Arts*, 152 F. 943 at 950 (8th Cir. 1907), affirmed 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1908):

"By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgagee, and that their proceeds might

be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for the payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge."

See also *In re Unikraft Homes of Virginia, Inc.*, 370 F.Supp. 667 (D.C.W.D.Va.1974); *In re Sequist*, 369 F.Supp. 678 (D.C.Conn.1974). In the *Sequist* case the court said at page 680:

"Since, in the present case, a sale of the mortgaged property free and clear of liens produced a fund which exceeded the principal of the secured debt, the petitioner was clearly entitled to interest beyond the date of bankruptcy, and the Referee correctly so held."

■ In view of the fact that the plaintiffs are oversecured, they are entitled to receive interest on their secured claims in accordance with the 15 per cent per annum provisions set forth in the mortgage notes. The parties previously submitted proposed orders wherein they agreed that if the plaintiffs are entitled to interest (which they are) the payments to them should be as follows:

"TO: PEOPLES NATIONAL BANK OF ROCKLAND COUNTY, $162,896.01, plus interest thereon at a per diem amount of $51.99 from January 7, 1982, to the date of payment by the trustee.

TO: NORTHEAST SMALL BUSINESS INVESTMENT CORPORATION, $87,263.65, plus interest thereon at a per diem amount of $27.85 from January 7, 1982, to the date of payment by the trustee.

TO: SAMUEL KRIPKE, $63,999.61, plus interest thereon at a per diem amount of $20.43 from January 7, 1982, to the date of payment by the trustee.

TO: SAMUEL KRIPKE and EMMA KRIPKE, $50,000.00, with interest amounting to $20,729.16 up to January 7, 1982, as testified to by the said Samuel Kripke on January 7, 1982, and together with interest at the per diem amount of $20.83 from January 7, 1982, to the date of payment by the trustee."

## ATTORNEYS' FEES

■ Prior to the adoption of the Bankruptcy Reform Act of 1978, a secured creditor's right to charge for attorneys' fees incurred in collecting the secured debt depended upon applicable state law. In the leading case of *Security Mortgage Company v. Powers*, 278 U.S. 149, 49 S.Ct. 84, 73 L.Ed. 236 (1928), Mr. Justice Brandeis wrote that the validity of a mortgagee's claim for attorneys' fees called for in a mortgage instrument was enforceable in bankruptcy cases in accordance with local law. Under the Bankruptcy Reform Act of 1978 the focus was altered; the bankruptcy court need not look to local law in the context of entitlement to attorneys' fees. Instead, the holder of a secured claim may collect reasonable attorneys' fees under Code § 506(b) if the security agreement in question expressly provides for such fees. *In re Smith*, 4 B.R. 12, 6 B.C.D. 424, 2 C.B.C.2d 77 (Bkrtcy.E.D.N.Y.1980).

■ In the instant case, the plaintiffs do not seek to recover the 20 per cent figure specified in the mortgage notes as reasonable attorneys' fees, which would amount to in excess of $50,000. Instead, the law firm of Savad & Gavioli, who were retained by the plaintiffs to collect the defaulted mortgage obligations, has submitted their time sheets and supporting information with regard to the legal services performed in an effort to collect the secured claims. The plaintiffs request an allowance for a fee of $35,906, based on 287.25 hours of legal services which they contend they are obligated to pay to their attorneys for legal services in connection with efforts to collect under the defaulted mortgage notes, together

with disbursements of $3,091.65. The plaintiffs' attorneys included in their charges legal services in connection with preparing and furnishing status reports to the Controller of the Currency on behalf of the Peoples National Bank. They contend that they had to provide these status reports for the bank because of the debtor's default under the mortgage. However, this is not a collection activity for which the debtor agreed to be responsible. Moreover, an inordinate amount of time was charged to research, review and conferences with the client. In light of all of the relevant factors to be considered, including the value, the extent and the nature of the services, as well as the necessary time spent, this court believes that the sum of $22,000 constitutes a reasonable collection fee for which the trustee and this estate in liquidation should be responsible. Additionally, the plaintiffs are entitled to recover $2491.65 for disbursements that were properly incurred by their attorneys.

### CREDITS AND DEDUCTIONS

The parties have agreed that the trustee may deduct from any payments made to the Peoples National Bank of Rockland County with respect to the original $270,000 secured loan the sum of $3,599.96. This sum represents interest to which the trustee is entitled as a credit for the period from the filing of the Chapter 11 petition to the time when the bank refunded the $20,000 to the trustee.

■ It is also noted that the trustee incurred expenses of $27,150 for liquidating collateral covered by the plaintiffs' secured claims. Moreover, counsel for the secured creditors' committee received an interim allowance of $10,923, together with disbursements of $349.83 for protecting the interests of the secured claims. Since the plaintiffs' secured claims as of the filing of the Chapter 11 petition, constitute 66 per cent of the total allowed secured claims, they should bear 66 per cent of the total expenses of $38,422.83 that were incurred in preserving and liquidating the secured collateral. Therefore, the trustee should also deduct $25,359.07 from the plaintiffs' entitlement. This deduction is authorized under 11 U.S.C. § 506(c) which provides that the trustee may recover from the property securing an allowed claim the reasonable, necessary costs and expenses of preserving or disposing of the property to the extent the secured claimant has benefitted.

SUBMIT ORDER on notice in accordance with the foregoing determination.