**In re Halbert RUTHERFORD, Jr. and Maxine Rutherford, Debtors.**

**Bankruptcy No. 82 B 8461.**

United States Bankruptcy Court, N.D. Illinois, E.D.

April 7, 1983.

**900**

H. Kent Heller, Harlan Heller Ltd., Aurora, Ill., for petitioner and debtors.

Vito M. Evola, Coles & Griffen Ltd., Chicago, Ill., for respondent and creditor.

## MEMORANDUM OPINION

FREDERICK J. HERTZ, Bankruptcy Judge.

This cause of action has arisen as a result of the objection of Halbert Rutherford, Jr. and Maxine Rutherford (hereinafter referred to as debtors) to the allowance of a portion of the secured claim of St. Charles Manufacturing Company (hereinafter referred to as creditor).

On May 11, 1979, the debtors executed a note payable to the creditor in the sum of $29,000.00. This note had an annual interest rate of 10% until maturity, and 12% thereafter. The note was to mature on September 15, 1979 and was secured by two mortgages encumbering two parcels of realty owned by the debtors: (1) 42 W. 465 Foxfield Drive, St. Charles, Illinois; and (2) 1504 Vollmer, Burlington, Iowa.

When the note became due, the debtors did not make payment. Subsequently, on March 30, 1981, the creditor filed an action for non-payment of the note in state court. Summary judgment was granted against the debtors in the amount of $38,096.20, consisting of $29,000.00 as the face value of the note and $9,096.20 as accumulated interest and attorney's fees.

On June 29, 1982, the debtors filed a joint petition under Chapter 13 of the Bankruptcy Code. On July 23, 1982, the creditor filed its proof of claim as a secured creditor in the amount of the state court judgment —$38,096.20. There is no dispute as to the existence of the loan or its face value. The debtors' Chapter 13 plan acknowledges this debt and the obligation to pay 100% of its face value. The debtors, however, argue that the creditor is not secured for any amount in excess of the $29,000.00 face value of the note.

To support this assertion, the debtors cite the Real Estate Settlement Act, 12 U.S.C. § 2601 et seq. (1976), and Regulation Z of the Federal Truth in Lending Act, 12 C.F.R. § 226.1 et seq. (1982). The debtors have not explained how the creditor's conduct violated these statutes. Moreover, any claim under these statutes appears to relate only to the debtors' liability under the note, not to the secured status of interest and fees after liability has been established. Consequently, this court finds these statutes to be inapplicable in the case at bar.

The debtors further argue:

By taking action upon the note, the note ceases to exist as a separate cause of action. And where, as here, the bankruptcy action has the effect of extinguishing the judgment, this operates to extinguish the security for the judgment. As authority for these assertions, the debtors refer to *Pappas v. Cappell,* 297 Ill.App. 301, 17 N.E.2d 537 (1938) and *Galway v. City of Chicago,* 207 Ill.App. 304 (1907). The court in *Pappas* found that "[w]here judgment is entered upon a note the note ceases to exist as a separate cause of action and the trust deed is security for payment of the judgment." 297 Ill.App. at 304, 17 N.E.2d 537. *Galway* involved the unauthorized satisfaction of a judgment. Neither case, however, even discusses whether a bankruptcy extinguishes a judgment and the underlying security. Moreover, neither case addresses whether a creditor can be secured for accumulated interest and fees. The cases cited by the debtors are not germane to the issue before this court. This argument is without merit.

■ Finally, the debtors argue that the creditor violated Illinois security law by not providing in the note the words "this note is secured by a junior mortgage," as required by Ill.Rev.Stat. Ch. 121½, §§ 137.5, 137.7 (1981). Again, this argument relates to the validity of the mortgage note. The only question presented in this case is whether the secured claim of the creditor includes interest and attorney fees up until the date of the filing of the bankruptcy petition.

The creditor contends that Sections 506(b) and 1325(a)(5)(B) of the Bankruptcy Code determine the value of its secured claim. The creditor asserts that these provisions authorize the computation of its claim as per the mortgage agreement. Thus, the value of the claim would be obtained by multiplying the face value of the note by 10% per annum over the term of the note, and 12% thereafter.

Section 506(b) provides:

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided under the agreement under which such claim arose. 11 U.S.C. § 506(b) (1979). The Legislative History to Section 506(b) states: "Subsection (b) codifies current law by entitling a creditor with an oversecured claim to any reasonable fees (including attorney's fees), costs, or charges provided under the agreement under which the claim arose. These fees, costs, and charges are secured claims to the extent that the value of the collateral exceeds the amount of the underlying claim." S.Rep. No. 989, 95th Cong., 2d Sess. 68, *reprinted in* 1978 U.S.Code Cong. & Ad. News 5787, 5854. This concept is not new; the rule was articulated as early as 1907 and affirmed by the United States Supreme Court in 1908:

By the terms of the note and mortgage the mortgagor agreed to pay interest on his debt until it was paid, and that the mortgaged lands might be sold by the mortgageee, and that their proceeds might be applied to the payment of this debt and interest. The covenant for the sale and the application of the proceeds of these lands to the payment of the debt and interest was valid and binding, and it ran with the land, so that when the latter came to the hands of the trustee it was mortgaged for payment of the interest as much as for the payment of the principal, and the proceeds of its sale necessarily came to his possession subject to the same charge.

*Coder v. Arts,* 152 F. 943, 950 (8th Cir.1907), *aff'd* 213 U.S. 223, 29 S.Ct. 436, 53 L.Ed. 772 (1909) (Mr. Justice Day).

■ The weight of legal authority has concluded that oversecured creditors are entitled to receive interest and collect reasonable attorney's fees under Section 506(b) of the Bankruptcy Code in accordance with the provisions set forth in the security agreement. *See, In re United Merchants and Manufacturers, Inc.,* 674 F.2d 134 (2d Cir.1982); *In re Elmwood Farm, Inc.,* 19 B.R. 338 (Bkrtcy.S.D.N.Y., 1982); *In re*

*Holl,* 13 B.R. 918 (Bkrtcy.D.Haw., 1981). This right exists both by statute and at common law.

In the instant case, the mortgage note dated May 11, 1979 expressly sets forth the face value of the loan and the interest rates. If the value of the real estate exceeds the encumbrances thereon, the creditor is oversecured. Accordingly, by operation of Section 506(b), the creditor would be entitled to the contract rate of interest. The two encumbered pieces of real estate are set out in the mortgage agreement. However, it is not clear from the record the extent of the debtor's equity in this real estate. Consequently, an evidentiary hearing must be instituted to determine the amount of equity in the debtors' realty.

The question of attorney's fees is more difficult than that of interest in the instant case. The interest rates are expressly indicated on the face of the mortgage note. There is no question that this aspect of the transaction was material and "bargained for." The provision granting the creditor attorney's fees, however, is buried deep within the fine print of the mortgage itself. The question is whether this clause is encompassed by the language of Section 506(b) as being "provided under the agreement under which such claim arose."

Where the ability to recover attorney's fees was placed inconspicuously within the agreement, one recent case held that classic contractual analysis required that this provision be strictly construed against the mortgagee. That court reasoned that the obligations under the mortgage were intended to reimburse the mortgagee for costs other than attorney's fees stemming from a bankruptcy proceeding. Consequently, attorneys fees were not allowed. *In re Roberts,* 20 B.R. 914, 921 (Bkrtcy.E.D. N.Y.1982).

However, in the instant case the debtors have not raised arguments of adhesion or unconscionability, and there is no indication of any merit to such arguments in the record. Bankruptcy courts have routinely applied Section 506(b) to provisions within the mortgage agreement. *See, In re Chateau*

*Royale Ltd.,* 6 B.R. 8 (Bkrtcy.N.D.Fla., 1980). Furthermore, a plain reading of the statute requires attorney's fees to be granted if they exist within the agreement. This court concludes that reasonable attorney's fees shall be granted pursuant to Section 506(b) of the Bankruptcy Code. Accordingly, the creditor must submit time sheets and supporting information with regard to the legal services performed in an effort to collect the secured claim. *See In re Elmwood Farm, Inc.,* 19 B.R. at 341–42. A hearing on the reasonableness of the creditor's attorney's fees will be conducted at the same proceeding where the debtors' equity in the realty is to be determined.

In addition to citing Section 506(b), the creditor also cites Section 1325(a)(5)(B). There is much confusion in the case law as to the application of Section 1325(a)(5)(B)(ii) to facts similar to those of the instant case. Section 1325(a)(5)(B)(ii) provides:

(a) The court shall confirm a plan if—

\*   \*   \*   \*   \*   \*

(5) with respect to each allowed secured claim provided for by the plan—

\*   \*   \*   \*   \*   \*

(B)(ii) the value, as of the effective date of the plan, of property to be distributed under the plan on account of such claim is not less than the allowed amount of such claim; . . .

11 U.S.C. § 1325(a)(5)(B)(ii) (1979).

Although there is no specific mention of interest in this statute, the concept that a creditor is entitled to the present value of the collateral encompasses the recovery of interest. This statute has been interpreted to mean "that as to a secured creditor the Chapter 13 plan can be confirmed if the plan provides that the holder of a secured claim *retain its lien* and be paid the value of its collateral as of the effective date of the plan." *In re Caudle,* 13 B.R. 29, 35 (Bkrtcy.W.D.Tenn.1981) [emphasis added]. This is applicable to the forced refinancing plans where the creditor's collateral must be protected over time.

Interpreting Section 1325, the court in *In re Crockett,* 3 B.R. 365 (Bkrtcy.N.D.Ill. 1980), held that creditor GMAC was entitled to the present value of its collateral (a car) over the term of the plan in order to protect the creditor from depreciation of the collateral. The protection afforded the creditor was the legal rate of interest over the term of the plan. There was no mention of legal rate of interest within the security agreement. The court imposed this interest rate within the scope of its equitable powers. *Id.* at 368. *Crockett* involved a situation where the lien would continue throughout the plan. Thus, the creditor was not to be paid out of the proceeds of a sale, but rather by a new court imposed financing agreement.

■ In the instant case, the Chapter 13 plan calls for the sale of realty, not the continuation of the lien. In circumstances where the proceeds of the sale of property are used to satisfy the secured claim, the concept of present value is not applicable. Where the secured creditor is oversecured, and the collateral is to be sold, fees and interest are attainable under Section 506(b) and Section 1325 is not applicable. *In re Caudle,* 13 B.R. at 34.

Thus, in the instant case, if there is sufficient equity in the realty to be sold under the plan, Section 506 will be applied and the creditor will have a secured claim which includes the face value of the loan, interest, and reasonable attorney's fees as per the security agreement.

The parties are to institute an evidentiary hearing at which the value of the debtors' equity in the realty in question can be determined. In addition, at this hearing, the court will hear evidence as to the reasonableness of the creditor's attorney's fees. The creditor is to prepare a draft order in accordance with this opinion within five (5) days.